## FAYERWEATHER *v.* RITCH.

## REYNOLDS *v.* RITCH.

### APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 157, 158.  Argued October 12, 13, 1904.—Decided November 28, 1904.

Where the appellant's contention is that the Circuit Court, by giving unwarranted effect to a judgment of a state court and accepting that judgment, which contained no finding of one of the fundamental facts as a conclusive determination of that fact, deprived him of his property without due process of law, and that contention is made in good faith, and under the circumstances, upon reasonable grounds, the application of the Constitution is involved and this court has jurisdiction of a direct appeal from the Circuit Court.

Where it appears that a question was distinctly put in issue and the parties presented, or had an opportunity to present, their evidence, and the question was decided by a court of competent jurisdiction, private right and public welfare both demand that the question so adjudicated shall, except in direct proceedings for review be considered as finally settled and conclusive upon the parties.

The ordinary rule in cases tried by the court without a jury is that a judgment entered without any special findings is, like a general verdict in a jury case, tantamount to a finding in favor of the successful party of all the facts necessary to sustain the judgment.

While in some cases on a plea of *res judicata* evidence *aliunde* the record is proper to show what particular questions were tried and determined

in the former case, it is not competent to introduce the testimony of the trial judge as to the matters then considered and passed on by him.

Where in an action in a court of competent jurisdiction the validity of certain releases is put in issue by the pleadings and no judgment can properly be rendered without determining that question, and judgment is rendered against the parties executing the releases and who were before the trial court, the judgment in effect determines that the releases are valid and the question of their validity is *res judicata* notwithstanding no special findings in regard thereto were made by the trial judge.

THE controlling question in these cases arises on pleas of *res judicata.* The essential facts are as follows:

On October 6, 1884, Daniel B. Fayerweather, a citizen and resident of the State of New York, made a will, by the ninth article of which he gave to twenty colleges bequests amounting in the aggregate to $2,100,000. By the tenth article he gave the residuary estate to his executors, as trustees, directing them to divide it equally among the twenty colleges named in the ninth article. On the same day he signed the following statement:

"This certifies that I have executed my will of this date, having been advised by my counsel of the provision and restrictions of the law of this State relative to benevolent corporations. I trust my heirs will permit the provision of this my will to be carried into effect."

At that time by chap. 360, Laws of 1860 of the State of New York, a testator having husband, wife, child or parent was forbidden to give to literary or benevolent institutions more than one-half of his estate. On December 13, 1884, the testator made a first codicil to his will, by which he revoked the tenth article and gave the residuary of his estate absolutely to his executors. In other respects the will was ratified. At or about the same time a paper, bearing date December 11, 1884, headed "Private Memorandum," was signed by him, which reads as follows:

"I have made Messrs. Bulkley and Ritch my residuary legatees in the confidence that thereby my intentions as expressed in my will shall be carried into effect, and without.

litigations on the part of any person or persons interested. In case of my death I trust that they will take such steps, by will or otherwise, as will protect my estate against the contingency of the death of either before my estate is settled and distributed."

By subsequent codicils minor changes were made, and Henry B. Vaughan was added as executor. The testator died on November 15, 1890, leaving a widow and three nieces, his only heirs at law and next of kin. On the day of his death he executed a codicil, which was mainly a confirmation of the provisions of the will and prior codicils.

Mr. Fayerweather's estate amounted at the date of the will to about three millions of dollars, and at the time of his death to from five to six millions of dollars, mainly in personal property.

While by articles in the will, prior to the ninth, he had made provision for his widow and also bequests to his three nieces, yet obviously his purpose was to give the bulk of his estate to the several colleges named, and to avoid the restraining effect of the New York statute. After the death of Mr. Fayerweather the will and codicils were propounded for probate, to which the widow and nieces filed objections. A hearing was had before the Surrogate, and on February 25, 1891, he entered an order admitting the will to probate, and leaving the contest of the codicils to continue. On February 24, 1891, the three executors, residuary legatees, made a deed of gift, which reads:

"Know all men by these presents, That we, Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees under the will, meaning thereby the original will and the subsequent codicils of Daniel B. Fayerweather, late of the city of New York, deceased, prompted by our determination that we will not retain for our own use any part of the residuary estate left to us by his will, and by the desire to make such disposition of his said residuary estate as in our judgment will best honor his memory, do dispose of so much

of the same as shall remain after the payment of all lawful fees, expenses and charges as follows:

"First, We reserve the power to make, and we retain the right to assent to any enlargement of the fifteen thousand dollars a year by the will left to Mrs. Fayerweather, which she may desire.

"Second, We reserve the power to make, and we retain the right to assent to any enlargement of the provisions made by the will for Mrs. Mary W. Achter and Mrs. Emma S. Drury, in case we shall be satisfied that such enlargement would not be against the wishes of Mr. Fayerweather.

"Third, We give to Lucy J. Beardsley, wife of Morris B. Beardsley, $100,000.

"We do this because of Mr. Fayerweather's letter written to Mr. Vaughan and Mr. F. B. Myrick. If accepted; this gift is in discharge of any claim under that letter."

Then, after making gifts of several sums to individuals, hospitals and colleges (some being those named in the will of Mr. Fayerweather, and others not so mentioned), the deed closes with these words:

"We execute this instrument, recognizing that there is pending a contest in proceedings for the probate of Mr. Fayerweather's will, and recognizing further that if such contest shall not prevail, a question may be made about our legal rights as devisees and legatees. . . . Our object is each for himself to give away whatever may come to us as residuary devisees and legatees under Mr. Fayerweather's will."

Subsequently, and on March 5, the executors, as residuary legatees, entered into an agreement with the contestants by which the amounts coming to them were increased, and thereupon the contestants executed the following paper:

"In consideration of the instrument of even date herewith executed by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees under the will, meaning thereby the original will and subsequent codicils of Daniel B. Fayerweather, . . . . we, the undersigned, being

the widow and all of the next of kin of the said Daniel B. Fayerweather, do hereby severally agree for ourselves, our, and each of our heirs, executors and administrators, as follows:

"1. All objections to the probate of the will and four codicils of the late Daniel B. Fayerweather, offered for probate to the Surrogate of the county of New York, are hereby withdrawn, and we consent to the probate of the same.

"2. No suit shall hereafter be brought for the construction of the said will and codicils or either of them, or to set aside the will and codicils or either of them, and we further agree not to make any claim upon the said Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan or either of them, or against their heirs or personal representatives, or either against them, the said Bulkley, Ritch and Vaughan, as executors, or as residuary legatees, other than for amounts left to us by the will and codicils aforesaid, and the deed of gift executed by the said Bulkley, Ritch and Vaughan on the 24th day of February, 1891, and the instrument dated on the 5th day of March, 1891.

"3. Upon the payment to the undersigned, respectively, of the several amounts mentioned in said deed of gift and said instrument, we will severally execute a general release of all claims, except those arising under the will and codicils, both to the executors and to the donees mentioned in the deed of gift, dated on the 24th day of February, 1891, and to the said Bulkley, Ritch and Vaughan individually."

On March 24, 1891, the codicils were admitted to probate on written consent signed by the attorneys for the parties to the contest. On June 12, 1891, the widow executed the following release:

"Know ye, that I, Lucy Fayerweather, widow of Daniel B. Fayerweather, of the City of New York, for and in consideration of the sum of two hundred and twenty-five thousand dollars, lawful money of the United States, to me in hand paid

by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, as executors and trustees under the last will and testament of Daniel B. Fayerweather, deceased, and individually, and as the representatives of the persons or corporations hereinafter named, forming a class known as donees, under the deed of gift executed by the said Bulkley, Ritch and Vaughan, on February 24th, 1891, which sum is in compromise and full settlement of any and all contests on my part of the will of said Daniel B. Fayerweather, deceased, or concerning his estate, have remised, released and forever discharged, and by these presents do, for myself and for my heirs, administrators and executors, remise, release and discharge, the said Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, as executors and trustees aforesaid, as individuals and as representatives of the said donees constituting a class, and also the said donees, to wit, the persons and corporations mentioned in a certain deed of gift duly delivered, made by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan on the 24th day of February, 1891, which deed of gift was introduced in evidence in the probate proceedings of the last will and testament of Daniel B. Fayerweather, deceased, and marked 'Exhibit No. 7, contestants,' and which said deed of gift is hereby made a part of this release, in order that the persons constituting said class of donees and to whom this release runs may be more fully known, and also the legal successors, assigns, heirs, executors and administrators of all the aforesaid persons and corporations, of and from and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, claims and demands whatsoever in law or in equity, which against the said persons or corporations, or any of them, I ever had or now have, or which I or my heirs, executors or administrators hereafter shall, can or may have for, upon, or by reason of any matter, cause or thing whatsoever, except my claim for the annuity given me by the will and codicils thereto of said Daniel B. Fayerweather, deceased, and also my claim for the increased annuity men-

tioned in the agreement dated March 5th, 1891, and made pursuant to the deed of gift above referred to."

Releases similar in form were executed by the other three contestants, the nieces and next of kin.

In January, 1893, five of the colleges named in article 9 of the will brought suit in the Supreme Court of the State of New York against the executors of Mr. Fayerweather's will, the executors of the will of Mrs. Fayerweather (who had died since the release), the nieces, the donees in the deed of gift, and all the colleges not joined as plaintiffs. The contention of the plaintiffs was that the codicil which gave the residue of the estate to the three executors absolutely was made in pursuance of an agreement that they should take that residue in trust for the colleges mentioned in the will and distribute it among them. The complaint set forth the will and codicils, their admission to probate and the issue of letters testamentary, and averred that the value of the estate left by the testator was upwards of $6,000,000 and the residuary estate more than $3,000,000. It alleged that the intention of the testator was to devote the principal part of his estate to the several institutions mentioned, and that the proceedings taken by him were under the advice of counsel and for the purpose of carrying into effect that intention, and upon a promise and assurance from the executors that they would dispose of the residuary estate accordingly; it averred also the fact of a contest in respect to the probate of the will and codicils, a settlement with the contestants in consideration of the payment of $310,000 and the execution of releases by them. The prayer was that it be adjudged and decreed that the residuary estate was devised by the testator and received by the executors in trust for the purposes set forth, that they be required to apply that estate to those purposes, and, also, "that the ultimate rights of the plaintiffs as between them and each of them and every of the other defendants herein be determined by the judgment in this action in accordance with the allegations of this complaint and the prayer hereinbefore contained."

The donees in the deed of gift answered, asserting the validity of that deed, and praying that its provisions be carried out.

The widow's executors and the nieces also appeared and filed an answer and counterclaim, in which they alleged that the agreement which the suit was brought to enforce was a secret trust to evade the New York statute by giving more than half to the several institutions, that the releases were obtained from them by concealment and fraud, and therefore of no obligation; and prayed for judgment, among other things—

"3d. That it be adjudged that the said settlements and releases made with or obtained from the said Lucy Fayerweather, Mary W. Achter and Emma S. Fayerweather, respectively, were and are each fraudulent and void, and that the same be set aside, upon such terms as may be just and equitable, and that the sums paid for the same to said releasors or their attorneys, respectively, with the interest thereon, including the increased payments to said Lucy Fayerweather on her annuity, be charged against or allowed upon the sums payable to them respectively under the judgment herein, or be otherwise provided or accounted for as may be according to equity.

"4th. That it be adjudged that the said deed of gift, dated February 24th, 1890 (Exhibit F), was and is fraudulent and void, and that the said Thomas G. Ritch, Justus L. Bulkley and Henry B. Vaughan be enjoined and restrained from further disturbing the said residuary estate, or any part thereof, under the same, except to continue the payment of the said annuity to said Anner Amelia Reynolds, as aforesaid.

"5th. That the said defendants Ritch, Bulkley and Vaughan may be required to account for the moneys and property received by them from the estate of the said Daniel B. Fayerweather under said last will and testament and codicils or otherwise, and for the application thereof, and to pay over the said moneys and property remaining in their hands among the parties to this action according to their several and re-

spective rights thereto, as the same may be adjudged in this action.

"6th. That the ultimate rights of the parties to this action in the estate of the said Daniel B. Fayerweather be determined and enforced by the judgment in this action, in accordance with the allegations of this answer and the foregoing prayers for relief therein.

"7th. That these defendants may have such other and further relief herein as may be just and equitable, with their costs herein, to be paid as the court may direct."

The decree of the Supreme Court at special term, entered on December 28, 1894, adjudged and decreed that the residuary estate passed to the executors in trust for the colleges named in the ninth paragraph of the will; that the executors and trustees be restrained and enjoined from distributing the residuary estate, or any part thereof under the deed of gift, and that the plaintiffs and certain of the defendants (including therein the executors of the will of Mrs. Fayerweather and two of the nieces) recover from the trustees their costs, together with extra allowances to be paid out of the trust funds. There was no formal finding of facts and no mention made in the decree of the specific claim of the executors of Mrs. Fayerweather's will and the nieces that the releases were fraudulently obtained. An appeal was taken by the defendants to the general term of the Supreme Court, which on December 18, 1895, affirmed the judgment. 91 Hun, 509. A further appeal was taken to the Court of Appeals, which on January 19, 1897, affirmed the judgment of the general term. 151 N. Y. 282. On January 28, 1897, a motion was made in the Court of Appeals to amend the remittitur so as to direct the Justice of the Supreme Court, before whom the action was tried at special term, to consider the evidence given before him at the trial concerning the releases and to determine whether the said releases were valid and binding or invalid and void, which motion was on March 9, 1897, denied.

After these proceedings in the state court two of the nieces

and next of kin, being citizens of the State of Iowa, instituted this suit in the Circuit Court of the United States, making defendants substantially all the parties to the suit in the state court, the one or two omissions in no way affecting the question before us. Subsequently the remaining executor, one having resigned, of the will of Mrs. Fayerweather filed a cross bill, the allegations and the relief asked being similar to those in the original bill.

These bills—in addition to setting forth the will and codicils executed by Mr. Fayerweather, the probate proceedings and the releases by the widow and nieces, and alleging that these letters were fraudulently obtained and not binding—averred the bringing of the suit hereinbefore referred to in the Supreme Court of the State by the five colleges, annexing copies of the pleadings, and alleged that "thereupon the issues so joined, as well as others duly raised by the answers of the several defendants, came on to be tried before said court, and these complainants gave evidence tending to prove the allegations in their said answer and all of said allegations, and thereupon it became and was the duty of said court to adjudge and determine whether the releases therein described were invalid, and whether these complainants were entitled to the affirmative relief prayed in respect thereto;" and further, that the defendants—

"Confederating and combining together and between themselves to prevent the entry of any judgment upon an actual determination of the invalidity of said releases so in issue, requested and induced the court to hold and decide that the right of the respective parties to said property and residuary estate did not require any consideration or decision of said issues, and said court thereupon made and rendered its decision without considering, passing upon or including in judgment the said issues, and omitted to decide upon these complainants' right to the affirmative relief by said answer prayed in respect to said releases.

"And thereupon there was filed and entered in said action

a decision and judgment, a copy of which is hereto annexed, which complainants pray may be referred to and taken as part of this bill as if the same were herein set forth at length.

"Thereupon by appeals taken from said judgment, in which appeals these complainants were respondents as well as appellants, said judgment was reviewed by the general term of said Supreme Court, sitting as a court for the correction of errors, and not exercising any original jurisdiction, and thereupon said court held and determined that the right of the respective parties to said property and residuary estate did require the consideration and decision of said issues, and thereupon, being duly informed by the record that said issues had not been in fact considered, passed upon or included in said judgment, it became and was the duty of said court, pursuant to due process of law, the law of the land and the provisions of the Constitutions of the State of New York and of the United States, to require and order that said issues should be in fact considered, passed upon and included in judgment by the trial court, and until that should be done said court could not duly adjudge or determine whether any error had been committed in such determination upon said issues.

"Nevertheless said court at said general term did not so require or order, but by various fictions of law imputed to said trial term and court below that it had determined said issues and had decided in favor of the plaintiffs in said action upon such determination, contrary to the truth and fact, and thereupon pretended to adjudge and determine, as such court for the correction of errors, that there was not sufficient preponderance of evidence to support the asserted invalidity of said releases to render such imputed determination of said trial court erroneous as matter of law, but that such imputed determination was supported by evidence sufficient to relieve the same from the assignment of error in so deciding.

"It was not competent for said general term to have exercised an original jurisdiction and to have adjudged said issues,

and thereupon to have modified said judgment so as to include the actual determination thereof; and said general term did not exercise such power, but confined its action wholly to the consideration of errors in the record.

"Thereupon said judgment was by appeals taken from the judgment of affirmance so rendered, in which appeals these complainants were respondents as well as appellants, and reviewed by the Court of Appeals of the State of New York.

"Said court determined that these complainants had no standing to be heard or to have their rights determined by said Court of Appeals, because the limitations imposed by statute upon the jurisdiction of said court precluded any inquiry into the facts, the proof of the merits of the said issues, but that said court was bound by the formal record procured as aforesaid, and by the fictions thereby adjudged as aforesaid, and had no power to review the same.

"During the pendency of the appeals aforesaid the control of the several courts below over said action and the trial thereof and the correction of any injustice arising as aforesaid was suspended, and upon the affirmance of said judgment of affirmance, by the statutes of the State of New York, any correction of the injustice arising as aforesaid was placed beyond the power of any court of said State, except as the Court of Appeals should, by its remittitur, confer power upon said subordinate courts to entertain and try the said issues.

"Thereupon these complainants duly made application to said Court of Appeals so to frame its said remittitur as to permit said subordinate courts to entertain and try the said issues, which application said court denied."

To these bills the defendants filed pleas of *res judicata,* claiming that the controversy between the parties was finally settled by the decision of the state court. These pleas were accompanied by an answer denying the allegations of fraud. The Circuit Court sustained the pleas and dismissed the bill and cross bill on the ground that the cause of action set forth

in them was barred by the prior judgment of the state court. From this decree of dismissal the plaintiffs appealed directly to this court.

*Mr. Roger M. Sherman* for appellant in No. 157 and *Mr. William Blaikie* for appellant in No. 158. *Mr. Charles Andrews* submitted a brief for appellants in Nos. 157 and 158.

This court has juridsiction on direct appeal. The appellants have not had due process of law. *United States* v. *Throckmorton,* 98 U. S. 61; *Hovey* v. *Elliott,* 167 U. S. 446. The question of whether the releases were fraudulent was never considered by the trial judge in the state court. A question not considered is not settled by the decision. *Hagar* v. *Reclamation District,* 111 U. S. 708; *State* v. *Rusk,* 23 Wisconsin, 643; *Starr* v. *Stark,* 2 Sawyer, 641.

Fundamental rights cannot be taken away without due process of law. *Barney* v. *New York,* distinguished, and see *Holden* v. *Hardy,* 169 U. S. 389; *Logan* v. *United States,* 144 U. S. 288; *Caldwell* v. *Texas,* 137 U. S. 697; *Hurtado* v. *California,* 110 U. S. 535; *Campbell* v. *Evans,* 45 N. Y. 358; *Taylor* v. *Porter,* 4 Hill, 140; *Wynehawer* v. *People,* 31 Connecticut, 328; *People* v. *O'Brien et al.,* 111 N. Y. 38; *Dash* v. *Van Vleeck,* 7 Johns. 427; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 325; *Boyd* v. *United States,* 116 U. S. 635; *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 695; *Walker* v. *Sauvinet,* 92 U. S. 92; *Allen* v. *Georgia,* 166 U. S. 140; *Mo. Pac. Ry.* v. *Nebraska,* 164 U. S. 417; *C., B. & Q. R. R.* v. *Chicago,* 166 U. S. 231; *Scott* v. *McNeal,* 154 U. S. 34; *Davidson* v. *New Orleans,* 96 U. S. 97.

There are private rights beyond the control of the State in every free government. *Loan Assn.* v. *Topeka,* 20 Wall. 603. A State has control of the procedure in its courts but cannot deprive citizens of fundamental rights. *Brown* v. *New Jersey,* 175 U. S. 175; *Bertholf* v. *O'Reilly,* 74 N. Y. 515: *West* v. *Louisiana,* 194 U. S. 258. The cases must be disposed of

according to law. The Circuit Court was free to decide this case upon the merits according to its own convictions. Comity deserves respect but it is not law. *Mast, Foos & Co.* v. *Stover Mfg. Co.,* 177 U. S. 489. The interlocutory decision of the Circuit Court of Appeals reversing the injunction order was not final and has not the weight of a decision of the case and is not *res judicata* or controlling at final judgment. *Keystone Iron Co.* v. *Martin,* 132 U. S. 93; 1 Freeman on Judgments, 4th ed., § 251; Pothier on Obligations, Pt. 4, c. 3, § 3, art. 1; *Webb* v. *Buckalew,* 82 N. Y. 559; *Snow* v. *Sargent,* 106 Fed. Rep. 232; High on Injunctions, 3d ed., § 5; *Andred* v. *Redfield,* 12 Blatchf. 425; *California Fig Syrup Co.* v. *Putnam,* 66 Fed. Rep. 754; *McLure* v. *Sherman,* 70 Fed. Rep. 90.

The Circuit Court of Appeals has never passed on the questions of *res judicata* and due process of law now before this court. The decision in *Trustees of Amherst College* v. *Ritch* is not *res judicata.* The record shows that Judge Truax who tried the case in the first instance did not consider the question of the validity of the releases, but decided that the releasors had nothing to release. The question here is the validity of the releases—hence the state court decision is not *res judicata.* Casparsz on Estoppel, 342; *Fifield* v. *Edwards,* 39 Michigan, 264; *State* v. *Rusk,* 23 Wisconsin, 643; *Russell* v. *Place,* 94 U. S. 608; *Packing Co.* v. *Sickles,* 5 Wall. 580; *Lantern* v. *Meyrose,* 27 Fed. Rep. 213; *Hooker* v. *Hubbard,* 102 Massachusetts, 245; *Aiken* v. *Peck,* 22 Vermont, 260.

As the state court judgment was not responsive to the issues of the complaint it is upon that ground not a bar. *Arnold* v. *Angell,* 62 N. Y. 511; *Romeyn* v. *Sickles,* 108 N. Y. 652; *Day* v. *New Lots,* 107 N. Y. 148; *Southwick* v. *Bank,* 61 How. Pr. 170; *Neudecker* v. *Kohlberg,* 81 N. Y. 301; *Stevens* v. *Mayor,* 84 N. Y. 305; *Bradley* v. *Aldrich,* 40 N. Y. 504; *Graham* v. *Read,* 57 N. Y. 683; *Reynolds* v. *Stockton,* 140 U. S. 254; *Crockett* v. *Lee,* 7 Wheat. 525.

The short form decision of Judge Truax had the same effect as a general verdict, as such it is not conclusive as to facts not proved or considered. *Bomeisler* v. *Forster*, 154 N. Y. 236; *Dickenson* v. *Hayes*, 31 Connecticut, 423; *Hungerford's Appeal*, 41 Connecticut, 327; *Sawyer* v. *Woodbury*, 7 Gray, 499; *Hooker* v. *Hubbard*, 102 Massachusetts, 245; *Foster* v. *The Richard Busteed*, 100 Massachusetts, 411; *Young* v. *Pritchard*, 75 Maine, 518; *Ward* v. *Boyce*, 152 N. Y. 203; *Hibshman* v. *Dubleban*, 4 Watts, 190; *Forcey's Appeal*, 106 Pa. St. 515; *Woodgate* v. *Fleet*, 44 N. Y. 13; *People* v. *Johnson*, 38 N. Y. 63.

The success of the colleges in excluding all consideration of the releases by Judge Truax estops them now from asserting that the question of the releases is *res judicata*. *Hovey* v. *Elliott*, 167 U. S. 414, 443. This is estoppel by conduct. Bigelow, 5th ed., 54; *Davis* v. *Wakelee*, 156 U. S. 389; *Davis* v. *Cromwell*, 68 Fed. Rep. 525. The issue as to the releases was decided only by the General Term or Appellate Division upon exceptions to a general decision. This is by a court unknown to the Constitution for the trial of causes. See the powers of the Appellate Division, *Benedict* v. *Arnoux*, 154 N. Y. 726; *Snyder* v. *Seaman*, 157 N. Y. 452; Story on Const. § 1761; Elliott's App. Pro. §§ 16, 17. This makes the plea of *res judicata* bad on its face. 2 Dan. Ch. Pr. 103; *Emmott* v. *Mitchell*, 14 Sim. 432.

The decision of Judge Truax did not show that this issue was decided. *Bomeisler* v. *Forster*, 154 N. Y. 237; *Galle* v. *Tode*, 148 N. Y. 277.

The issue must be same or the question is not *res judicata*. So in will cases. *Gaines* v. *Hennen*, 24 How. 553; *Burt* v. *Steinburger*, 4 Cowen, 563. No power exists in the appellate courts to find facts not found by the trial court. A judgment affirmed on facts not found by the trial court is not due process of law. *Truesdale* v. *Burke*, 145 N. Y. 616, 617; *Smith* v. *Platt*, 96 N. Y. 637; *Rodgers* v. *Clement*, 162 N. Y. 427; *Iselin* v. *Starin*, 144 N. Y. 460; *Thomas* v. *N. Y. Life Ins. Co.*, 99 N. Y. 250; *Ehrichs* v. *De Mill*, 75 N. Y. 370; *Whitehead* v.

*Kennedy,* 69 N. Y. 462; *Foot* v. *Ætna Life Ins. Co.,* 61 N. Y. 578; *Griffin* v. *Maynard,* 17 N. Y. 28.

Mr. *Elihu Root,* with whom Mr. *James L. Bishop,* Mr. *William Forse Scott,* Mr. *William Ford Upson,* Mr. *John McL. Nash,* Mr. *C. N. Bovee,* Mr. *Thomas H. Hubbard,* Mr. *Stewart L. Woodford,* Mr. *Horace Russell,* Mr. *Henry L. Stimson,* Mr. *Alfred W. Kiddle,* Mr. *Seth Sprague Terry,* Mr. *George G. Reynolds,* Mr. *Henry B. Twombly,* Mr. *Haley Fiske* and Mr. *Henry Stoddard* were on the brief, for various colleges, appellees.

Mr. *John E. Parsons* for appellees, Bulkley and Vaughan, and Mr. *C. N. Bovee* for appellees, Ritch and Marietta College, submitted a separate brief.

Mr. *Thomas H. Hubbard* submitted a separate brief for appellee, President and Trustees of Bowdoin College.

This court is without jurisdiction on direct appeal. 26 Stat. 826.

The jurisdiction of the court below was not in issue or if it was it was decided in appellants' favor. *United States* v. *Jahn,* 155 U. S. 109; *Anglo-Am. Prov. Co.* v. *Davis Provision Co.,* 191 U. S. 376. No question of jurisdiction was certified to this court. *Filhiol* v. *Torney,* 194 U. S. 356.

The jurisdiction of the Circuit Court as to its Federal jurisdiction was not in issue, but the question was merely one as to the equity powers of the court. *Louisville Trust Co.* v. *Knott,* 191 U. S. 225; *Bache* v. *Hunt,* 193 U. S. 523; *Blythe* v. *Hinckley,* 173 U. S. 501, 506; *Huntington* v. *Laidley,* 176 U. S. 668, 679. And see *Chappell* v. *United States,* 160 U. S. 499; *Van Wagenen* v. *Sewell,* 160 U. S. 369, as necessity for certification of question.

The jurisdiction of the Circuit Court was not in issue in the court below. The decision of the court did not rest upon the ground that the Circuit Court as a Federal court did not have

jurisdiction to hear and determine the cause; on the contrary, the court assumed jurisdiction in giving effect to the judgment of the state court in *Amherst* v. *Ritch*. The Judiciary Act of March 3, 1891, 26 U. S. Stat. c. 826; *Mex. Cent. Railway Co.* v. *Eckman*, 187 U. S. 429; *O'Niel* v. *United States*, 190 U. S. 36; *Blythe* v. *Hinckley*, 173 U. S. 501; *Bache* v. *Hunt*, 193 U. S. 523; *United States* v. *Rider*, 163 U. S. 132; *Smith* v. *McKay*, 161 U. S. 355; *Blythe* v. *Blythe*, 172 U. S. 644; *Louisville Trust Co.* v. *Knott*, 191 U. S. 225; *Huntington* v. *Laidley*, 176 U. S. 668; *Arkansas* v. *Schlierholz*, 179 U. S. 598; *Shields* v. *Coleman*, 157 U. S. 177; *Cosmopolitan Mining Co.* v. *Walsh*, 193 U. S. 460; *Robinson* v. *Caldwell*, 165 U. S. 359; *Filhiol* v. *Torney*, 194 U. S. 356; *Barney* v. *New York*, 193 U. S. 430; *West* v. *Louisiana*, 194 U. S. 258. See *Chappell* v. *United States*, 160 U. S. 499; *Van Waggenen* v. *Sewell*, 160 U. S. 369, as to necessity for certificate.

This suit is not one which involves the construction or application of the Constitution of the United States, within the meaning of the Judiciary Act of March 3, 1891, authorizing the taking of appeals or writs of error in such cases from District or Circuit Courts of the United States direct to the Supreme Court. *Cosmopolitan Mining Company* v. *Walsh*, 193 U. S. 460; *Treat Mfg. Co.* v. *Standard S. & I. Co.*, 157 U. S. 674; *Sloan* v. *United States*, 193 U. S. 614, 620; *Lambert* v. *Barett*, 157 U. S. 697; *Central Land Co.* v. *Laidley*, 159 U. S. 103; *Weber* v. *Rogan*, 188 U. S. 10; *Wilson* v. *North Carolina*, 169 U. S. 586; *Carey* v. *Houston & Tex. Cent. R. R. Co.*, 150 U. S. 170; *N. O. Water Works Co.* v. *Louisiana*, 185 U. S. 336; *Forsyth* v. *Vehemeyer*, 177 U. S. 177; *Iowa Cent. R. R. Co.* v. *Iowa*, 160 U. S. 389.

The mere assertion by plaintiffs of constitutional questions, or that they have been deprived of their property without due process of law, does not establish jurisdiction. *Newburyport Water Co.* v. *Newburyport*, 193 U. S. 561, 576, and cases cited; *Maynard* v. *Hecht*, 151 U. S. 324; *New Orleans Water Works Co.* v. *Louisiana*, 185 U. S. 336; *St. Joseph & G. I. R. R.*

*Co.* v. *Steele,* 167 U. S. 659; *West. Un. Tel. Co.* v. *Ann Arbor R. Co.,* 178 U. S. 239; *Lampasas* v. *Bell,* 180 U. S. 276.

The United States Circuit Court has no jurisdiction to set aside a will admitted to probate and establish another and a different will as a testamentary act. *Broderick's Will,* 21 Wall. 503; *Simmons* v. *Saul,* 138 U. S. 439, 459; *Fouvergne* v. *City of New Orleans,* 18 How. 470; *Langdon* v. *Goddard,* 2 Story, 267; *Wahl* v. *Franz,* 100 Fed. Rep. 680; *Tarver* v. *Tarver,* 9 Peters, 174; *Re Aspinwall Estate,* 83 Fed. Rep. 851; *Reed* v. *Reed,* 31 Fed. Rep. 49; *Copeland* v. *Bruning,* 72 Fed. Rep. 5; *In re Cilley,* 58 Fed. Rep. 977; *Oakley* v. *Taylor,* 64. Fed. Rep. 245; *In re Frazer,* Fed. Cas. 5068, vol. 9; *Ellis* v. *Davis,* 109 U. S. 485; *Carrou* v. *O'Callagan,* 125 Fed. Rep. 657; *Richardson* v. *Green,* 61 Fed. Rep. 423; *Cilley* v. *Patton,* 62 Fed. Rep. 498; *Kirby* v. *C. & N. W. R. Co.,* 106 Fed. Rep. 551; *Byers* v. *Macauley,* 149 U. S. 608; *In re Foley,* 80 Fed. Rep. 949; *The Hammburg,* 119 U. S. 199.

If the jurisdiction of the Federal Court to probate a will is dependent upon the jurisdiction of the Supreme Court of the State of New York to grant such relief, such jurisdiction does not exist in the state courts. *Anderson* v. *Anderson,* 112 N. Y. 104; *Delabarre* v. *McAlpin,* 71 App. Div. 591; *Post* v. *Mason,* 91 N. Y. 539.

The right, title and interest of the appellants are *res adjudicata* in respect to the fund constituting the residuary estate, by virtue of the proceedings and decree in the suit of the trustees of *Amherst College* v. *Ritch et al.*

The decree in that case is an estoppel of record on the appellants to bring the present actions, and is conclusive not only as to the matters litigated, but also upon those which *might* have been litigated in that action. This concludes any question which might be raised by the appellants as to a will of 1878, or a will of 1880, or any testamentary papers of Fayerweather, other than the will and codicils of 1884, which were the subject of adjudication in that case.

That case was properly adjudicated. There is no lack of

due process of law in the appellate courts supplying a finding not made by the trial court where the evidence warrants it and is submitted on bill and exceptions as was done.   N. Y. Code Civ. Pro. § 1022; Laws, 1894, ch. 688; Laws, 1895, ch. 946; *First National Bank* v. *Chalmers*, 144 N. Y. 432; *Osborn* v. *Green*, 161 N. Y. 353; *Ogden* v. *Alexander*, 140 N. Y. 356; *Marvin* v. *Brewster Iron Co.*, 55 N. Y. 538, 547; *Newman* v. *Frost*, 52 N. Y. 422; *Hays* v. *Miller*, 70 N. Y. 112; *Meyer* v. *Lathrop*, 73 N. Y. 315, 321; *Sheldon* v. *Sherman*, 42 N. Y. 484, 489; *Grant* v. *Morse*, 22 N. Y. 323; *Rider* v. *Powell*, 28 N. Y. 310; *Oberlander* v. *Spies*, 45 N. Y. 175; *Page* v. *Met. El. R.*, 10 Misc. 134; *Milleneaux* v. *Terwilliger*, 50 Hun, 526; *Harding* v. *Elliott*, 91 Hun, 502; *Benedict* v. *Arnoux*, 7 App. Div. 1; *Ross* v. *Caywood*, 16 App. Div. 591; *Edson* v. *Bartow*, 154 N. Y. 199.   While the General Term could not reverse and render absolute judgment for appellant it can affirm on a case and exceptions upon facts not specifically stated in a general concise decision.   *Johnstone* v. *O'Connor*, 21 App. Div. 77; aff'd 162 N. Y. 639; *Keegan* v. *Smith*, 60 App. Div. 168; *Gardner* v. *N. Y. Mutual Sav. & L. Assn.*, 67 App. Div. 141; *Multz* v. *Price*, 91 App. Div. 116; *Bomeisler* v. *Forster*, 154 N. Y. 229, 236; *People* v. *Barker*, 152 N. Y. 431; *Health Dept.* v. *Weeks*, 22 App. Div. 110; *Viele* v. *R. R. Co.*, 20 N. Y. 184; *Smith* v. *Coe*, 29 N. Y. 666.

The Court of Appeals having declared that the General Term had jurisdiction to affirm a judgment upon the facts appearing in the evidence which had not been passed upon by the Court at Special Term, the Federal courts are conclusively bound by the law thus settled and announced. *Sioux City T. B. W. Co.* v. *Trust Co. of N. A.*, 173 U. S. 99; *M., K. & T. R. Co.* v. *McCann*, 174 U. S. 580; *Morley* v. *L. S. & M. S. Ry. Co.*, 146 U. S. 162.

A general finding is as conclusive upon all matters of fact as the verdict of a jury.   *Martinton* v. *Fairbanks*, 112 U. S. 670; *Lehnen* v. *Dickson*, 48 U. S. 71; *McDoyle* v. *McCormick*, 121 Fed. Rep. 61; *Hughes* v. *Livingston*, 104 Fed. Rep. 306;

*Paul* v. *D., L. & W. R. Co.,* 130 Fed. Rep. 951; *Corliss* v. *Pulaski Co.,* 116 Fed. Rep. 289.

The due process clause of the Fourteenth Amendment does not necessitate that the proceedings in a state court shall be by a particular mode, but only that there shall be a regular course of proceedings, in which notice is given of the claim asserted and an opportunity afforded to defend against it. *Simon* v. *Craft,* 182 U. S. 427; *Louisville & N. R. Co.* v. *Schmidt,* 177 U. S. 230; *Re Robert W. Parsons,* 191 U. S. 45; *Missouri* v. *Lewis,* 101 U. S. 22; *New Orleans W. Co.* v. *Louisiana,* 185 U. S. 336, 350; *Kennard* v. *Morgan,* 92 U. S. 480; *Deposit Bank* v. *Frankfort,* 191 U. S. 499; *Loeb* v. *Columbia County,* 179 U. S. 492.

An appeal is a privilege given and regulated by the State. If a party has been afforded due process of law by a trial he cannot say that he was denied due process because he has no appeal or the appeal is regulated by state laws. *McKane* v. *Durston,* 153 U. S. 684, 687; *Andrews* v. *Swartz,* 156 U. S. 272; *Holden* v. *Hardy,* 169 U. S. 366; *Central Land Co.* v. *Laidley,* 159 U. S. 103; *Walker* v. *Sauvinet,* 92 U. S. 90; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9, 26; *Morley* v. *L. S. & M. S. R. Co.,* 146 U. S. 162, 171; *Bergemann* v. *Backer,* 157 U. S. 655; *Fielden* v. *Illinois,* 143 U. S. 452; *West* v. *Louisiana,* 194 U. S. 258.

A correct decision will not be reversed on appeal because founded upon a wrong reason. *Ward* v. *Hasbrouck,* 169 N. Y. 407, 420; *Marvin* v. *Univ. Life Ins. Co.,* 85 N. Y. 278, 284; *Allard* v. *Graesert,* 61 N. Y. 1; *Ferguson* v. *Gill,* 74 Hun, 566.

Federal courts of equity have no power to disaffirm or disregard judgments of the state courts by reason of error or irregularity other than want of jurisdiction or fraud. *Milne* v. *Deen,* 121 U. S. 525; *Barrow* v. *Hunton,* 99 U. S, 80; *Graham* v. *Railroad Co.,* 118 U. S. 161; *Arrowsmith* v. *Gleason,* 129 U. S. 99; *Marshall* v. *Holmes,* 141 U. S. 589, 600; *K., Ft. S. & M. R. Co.* v. *Morgan,* 21 C. C. A. 468; *In re Converse,* 137 U. S. 624, 631; *Caldwell* v. *Texas,* 137 U. S. 692; *Iowa Central*

v. *Iowa,* 160 U. S. 389; *People* v. *Supervisors,* 70 N. Y. 228, 234; *Davidson* v. *New Orleans,* 96 U. S. 97, 104; *Gallup* v. *Schmidt,* 183 U. S. 300; *French* v. *Barber Asphalt Co.,* 181 U. S. 324.

The rights of each of the parties were conclusively determined by the judgment in the *Amherst College case* and the question is *res judicata. Fayerweather* v. *Ritch,* 91 Fed. Rep. 721; *Landon* v. *Bulkley,* 95 Fed. Rep. 344; *Manhattan Trust Co.* v. *Trust Co. of North America* (C. C. A. 8th Circuit), 107 Fed. Rep. 328; *New Orleans* v. *Citizens' Bank,* 167 U. S. 371; *Cromwell* v. *County of Sac,* 94 U. S. 352; *United States* v. *Calif. & Oregon Land Co.,* 192 U. S. 355; *Dowell* v. *Applegate,* 152 U. S. 327, 343; *Wilson's Exr.* v. *Deen,* 121 U. S. 525; *Stout* v. *Lye,* 103 U. S. 66; *Lumber Co.* v. *Buchtel,* 101 U. S. 638; *Mitchell* v. *First Nat. Bank of Chicago,* 180 U. S. 471; *Manson* v. *Duncanson,* 166 U. S. 533; *United States* v. *Throckmorton,* 98 U. S. 65; *Smith* v. *Nelson,* 62 N. Y. 288, 289; *Sanders* v. *Soutter,* 126 N. Y. 199; *Herring* v. *N. Y., L. E. & W. R. R. Co.,* 105 N. Y. 340; *Pray* v. *Hegeman,* 98 N. Y. 358; *Thorn* v. *De Breteuil,* 179 N. Y. 64, 79; *Leavitt* v. *Wolcott,* 95 N. Y. 212; *Last Chance Mining Co.* v. *Tyler Mining Co.,* 157 U. S. 683.

The validity of the releases was determined by the state court decision. The appellate courts had power to examine the whole record even in the absence of a special finding by the trial judge. *Ward* v. *Hasbrouck,* 169 N. Y. 407; *Keegan* v. *Smith,* 60 App. Div. 168; *Thomas* v. *N. Y. Life Ins. Co.,* 99 N. Y. 250; *Bank* v. *Chalmers,* 144 N. Y. 432; *Lantern Co.* v. *Styles & Parker,* 135 N. Y. 209.

It is not competent to impeach a judgment by calling judges to the witness stand to testify as to the mental processes by which they reached the conclusion on which the judgment is based. Such a course is contrary to the settled rules of law, and if permitted would inaugurate a most pernicious practice. *The People* v. *Columbia Common Pleas,* 1 Wend. 297; *Sargent* v. *Anonymous,* 5 Cowen, 106; *Dana* v. *Tucker,* 4 Johns. 487; *Welling* v. *Swasey,* 3 Gil. & Johns. 473.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

Our jurisdiction of this direct appeal from the decision of the Circuit Court is invoked on the ground that the case involves the application of the Constitution of the United States.

The contention is that by Article V of the amendments to the Federal Constitution no person can "be deprived of life, liberty, or property, without due process of law;" that these plaintiffs were entitled to large shares of the estate of Daniel B. Fayerweather; that they were deprived of this property by the judgment of the Circuit Court, which gave unwarranted effect to a judgment of the state courts; that this action of the Circuit Court is not to be considered a mere error in the progress of a trial, but a deprivation of property under the forms of legal procedure. In *Chicago, Burlington &c. Railroad* v. *Chicago,* 166 U. S. 226, we held that a judgment of a state court might be here reviewed if it operated to deprive a party of his property without due process of law, and that the fact that the parties were properly brought into court and admitted to make defense was not absolutely conclusive upon the question of due process. We said (p. 234):

"But a State may not, by any of its agencies, disregard the prohibitions of the Fourteenth Amendment. Its judicial authorities may keep within the letter of the statute prescribing forms of procedure in the courts and give the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with that amendment. In determining what is due process of law regard must be had to substance, not to form. This court, referring to the Fourteenth Amendment, has said: 'Can a State make anything due process of law which, by its own legislation, it chooses to declare such? To affirm this is to hold that the prohibition to the States is of no avail, or has no application where the invasion of private rights is effected under the forms of state legislation.' *Davidson* v. *New Orleans,* 96 U. S. 97, 102. The

same question could be propounded, and the same answer should be made, in reference to judicial proceedings inconsistent with the requirement of due process of law. If compensation for private property taken for public use is an essential element of due process of law as ordained by the Fourteenth Amendment, then the final judgment of a state court, under the authority of which the property is in fact taken, is to be deemed the act of the State within the meaning of that amendment."

And again (pp. 236, 237):

"The mere form of the proceeding instituted against the owner, even if he be admitted to defend, cannot convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation."

If a judgment of a state court can be reviewed by this court on error upon the ground that, although the forms of law were observed, it necessarily operated to wrongfully deprive a party of his property (as indicated by the decision just referred to) a judgment of the Circuit Court of the United States, claimed to give such unwarranted effect to a decision of a state court as to accomplish the same result, may also be considered as presenting the question how far it can be sustained in the view of the prohibitory language of the Fifth Amendment, and thus involve the application of the Constitution. It is said that the right of these plaintiffs to share in the estate of Daniel B. Fayerweather is undoubted, unless destroyed by the releases they executed; that the fundamental question presented in the trial court of the State was the validity of those releases; that notwithstanding this that court came to its conclusion and rendered its judgment without any determination thereof; that the appellate courts wrongfully assumed that the trial court had decided the question, and rendered their judgments upon that assumption; so that the necessary result of the proceedings in the state courts was a deprivation of the right of the plaintiffs to a share of the estate, without any finding of the vital fact which alone could destroy their right. The

contention is not that the state courts erred in their finding in respect to this fact, but that there never was any finding. Such decision of the state courts, made without any finding of the fundamental fact, was accepted in the Circuit Court of the United States as a conclusive determination of the fact. Although these plaintiffs were parties to the proceedings in the state courts and presented their claim of right, if it be true that the necessary result of the course of procedure in those courts was a denial of their rights—a taking away and depriving them of their property without any judicial determination of the fact upon which alone such deprivation could be justified—a case is presented coming directly within the decision in 166 U. S. *supra.* Giving effect in the Circuit Court to the state judgment does not change the character of the question. It is simply adding the force of a new determination to one wrongfully obtained, and adding it upon no new facts. Whether the contention of the plaintiffs in respect to the character of the state proceedings can be sustained or not is a question upon the merits and does not determine the matter of jurisdiction. That depends upon whether there is presented a *bona fide* and reasonable question of the wrongful character of the proceedings in the state courts and the necessary result therefrom. We are of opinion that the jurisdiction of this court must be sustained.

We pass, therefore, to consider the merits of the case. Private right and public welfare unite in demanding that a question once adjudicated by a court of competent jurisdiction shall, except in direct proceedings to review, be considered as finally settled and conclusive upon the parties. *Interest reipublicæ ut sit finis litium.* But in order to make this finality rightful it should appear that the question was distinctly put in issue; that the parties presented their evidence, or at least had an opportunity to present it, and that the question was decided. Cases of an alleged prior adjudication have frequently been presented in this court and the scope of a plea thereof fully determined. In the leading

case of *Cromwell* v. *County of Sac,* 94 U. S. 351, 352, we said:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever."

See also *Wilson's Executor* v. *Deen,* 121 U. S. 525; *Hefner* v. *Northwestern Life Ins. Co.,* 123 U. S. 747; *Wiggins Ferry Co.* v. *O. & M. Ry. Co.,* 142 U. S. 396; *Nesbit* v. *Riverside Independent*

*District,* 144 U. S. 610; *Johnson Company* v. *Wharton,* 152 U. S. 252; *Dowell* v. *Applegate,* 152 U. S. 327; *Last Chance Mining Company* v. *Tyler Mining Company,* 157 U. S. 683; *New Orleans* v. *Citizens' Bank,* 167 U. S. 371; *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1; *Bryar* v. *Campbell,* 177 U. S. 649; *United States* v. *California & Oregon Land Company,* 192 U. S. 355, 358.

The state court was one of competent jurisdiction, and the present contestants were before that court, taking part in the litigation. The validity of the releases was put in issue by the pleadings, and no judgment could properly have been rendered without a determination of that question. The colleges sought to enforce a secret trust, but the property covered by the trust, together with that passing under the ninth article of the will, was the bulk of the estate—far more than half. Such a disposition of the testator's property was in contravention of the laws of New York. They who would take the estate in case of intestacy had a right to object to the enforcement of the trust. Only on condition that they waived their objections and released could it be sustained. The judgment enforced it. It therefore practically determined that the releases were valid, and decided against the contention of these plaintiffs that they were fraudulent and void. All this is evident from a perusal of the pleadings. The appellants concede this and rest their claim in the Federal court partly upon that basis. Thus, in their brief it is said:

"The issues so joined came on to be tried in the state Supreme Court; these complainants gave evidence tending to prove their allegations, and thereupon it became the duty of the court to adjudge whether the releases which they assailed were invalid and whether they were entitled to the affirmative relief prayed. The issues so tendered were necessary to be determined before any valid judgment upon those issues could be given pursuant to due process of law, the law of the land and the provisions of the Constitution of the United States."

The case was tried by the court without a jury. No special

findings of fact were made. According to testimony given on
the trial of this case in the Circuit Court the omission to make
special findings was with the acquiescence (if not at the in-
stance) of all the counsel appearing in the state court. The
decree adjudged that the residuary estate was held in trust
for the colleges named in the ninth article of the will, enjoined
the residuary legatees from distributing any portion of that
estate under the deed of gift, and directed that it be paid over
to the respective colleges. The ordinary rule in respect to a
judgment without any special findings is that it, like a general
verdict of a jury, is tantamount to a finding in favor of the
successful party of all the facts necessary to sustain the judg-
ment. In the general term, on the appeal taken to it, two
opinions were filed. One by Judge Follett, in which Judge
Parker concurred, and one by the presiding judge, Van Brunt.
Judge Follett, after stating that the executors of the testator's
widow and two of his heirs at law and next of kin sought to
have the residuary clause declared invalid, under chap. 360 of
the Laws of 1860, said:

"The difficulty with their contention is that the widow and
heirs released all of their interest in the estate, for valuable
considerations paid to them. . . . It is urged that these
releases were procured by fraud and undue influences. There
is no evidence in the record justifying this contention. The
terms of settlement were agreed on during the controversy in
the surrogate's court over the probate of the will and codicils,
and the widow and heirs were represented in that contro-
versy, and in the settlement, by distinguished counsel and
acted under their advice. . . . If the person entitled to
contest a will, or some one or more of its provisions, voluntarily
and for a valuable consideration, received after the testator's
death, with full knowledge of the invalidity of the will, divests
himself of all interest in the property attempted to be dis-
posed of by it, he cannot impeach its validity."

Presiding Judge Van Brunt thus stated his conclusions:

"The testator left him surviving a widow, who was the only

person who could call into operation for her protection the statute which we have quoted. The widow, however, has released to the executors all claims to the estate, which release cannot be successfully attacked or set aside. There is consequently no person for whose benefit the statute can operate.

"No rights of heirs and next of kin have been infringed upon, because the trust does not contravene any statute for their benefit, and is not the subject of attack by them. If it were, they have also executed a release of their interest in the estate in the same manner as the widow.

"We have therefore the case of a trust established, which would be valid as against all the world but for the statute in favor of the widow, and the widow, having released all her rights in the estate, how can her representatives claim the invalidity of a trust as to property in which she had no interest?"

The opinion in the Court of Appeals was delivered by Judge Vann, and concurred in by all of the judges except Chief Judge Andrews. In it it is said:

"Although the decision by the special term and the affirmance by the general term were general in form, necessarily some facts were found by those courts, even if they are not specified in the record. Otherwise the burden of deciding questions of fact would be cast upon this court, which has jurisdiction to decide only questions of law. We think that the effect of a decision by the trial court without expressing the facts found is the same as if there had been a general verdict rendered by a jury, and that the same presumptions arise in its support.

　　*　　*　　*　　*　　*　　*　　*

"We are of the opinion, therefore, that where the decision of the special term does not state the facts found, and the judgment entered thereon has been affirmed by the general term, upon an appeal to this court, all the facts, warranted by the evidence and necessary to support the judgments below, are presumed to have been found. Hence, upon such an appeal, we have no more control over the facts than we have

when specific findings are made by the special term and affirmed by the general term. This conclusion takes the question as to the fraud alleged to have been practiced by the residuary legatees upon the widow and next of kin in procuring the releases out of the case, for it cannot be said on the record before us that the evidence tending to show fraud is so irresistible as to make the omission to find fraud an error of law. Assuming that there was evidence enough ·to warrant the inference of fraud, there was also ample evidence to warrant the inference there was no fraud. A question of fact was thus presented which is beyond our power of review."

Thus the Court of Appeals held in accord with the ordinary ruling as to the effect of a judgment without findings. So it has frequently decided. In *Bartlett* v. *Goodrich*, 153 N. Y. 421, 424, it said:

"The learned trial judge held that the plaintiff was entitled to recover, and the general term has affirmed the judgment. There were no findings made as the result of the trial, but simply a brief statement of the ground of the decision. In this condition of the record we must presume that all facts warranted by the evidence, and necessary to support the judgment, have been found. (*Amherst College* v. *Ritch*, 151 N. Y. 282.) The appeal, therefore, cannot prevail unless it appears, as matter of law, that the learned trial judge was not warranted, upon any fair view of the evidence, in finding as he did, that the deceased·was, at the time of his death, the equitable owner of the policies."

See also *N. Y. Security & Trust Co.* v. *Lipman*, 157 N. Y. 551, 556; *Garvey* v. *Long Island R. R. Co.*, 159 N. Y. 323, 328; *Reed* v. *McCord*, 160 N. Y. 330, 334; *Solomon* v. *Continental Fire Insurance Company*, 160 N. Y. 595, 598; *Rodgers* v. *Clement*, 162 N. Y. 422, 427; *National Harrow Company* v. *Bement & Sons*, 163 N. Y. 505, 510; *City of Niagara Falls* v. *N. Y. C. & H. R. R. R.*, 168 N. Y. 610; *Critten* v. *Chemical National Bank*, 171 N. Y. 219. 231; *Hutton* v. *Smith*, 175 N. Y. 375, 378.

After the filing of its opinion an application made to the Court of Appeals, as shown in the statement of facts, to amend the remittitur so as to direct the trial court to find specifically whether the releases were valid or not, was denied.

We have thus the case of a hearing in the trial court upon issues which required a determination of the validity of these releases as a condition of a judgment adverse to these plaintiffs; a judgment against them; an affirmance of the judgment by the general term of the Supreme Court, with an opinion declaring that there was in the record no evidence justifying the claim that these releases were fraudulently obtained and void; and a further affirmance by the Court of Appeals, accompanied by an opinion declaring that upon the state of the record it was to be presumed that the validity of the releases had been affirmatively found, and also that there was sufficient evidence to sustain such a finding, followed by a refusal to send the question of the validity of the releases back to the trial court for consideration. Notwithstanding all this, apparent upon the face of the record, the plaintiffs insist that the validity of the releases was never determined by any of the state courts, and that the final judgment of affirmance by the Court of Appeals was based upon the presumption of a determination which was never in fact made.

Upon what is this contention based? First, the silence of the judgment, which contains no findings to indicate upon what it is based; second, a memorandum of decision filed by the trial judge, in which he states that "the grounds upon which the issues have been decided are" a promise of the executors that if made residuary legatees they would distribute the residuary estate among the colleges named in the ninth article, and that the testator made them residuary legatees in reliance thereupon ; third, the opinion of the trial judge, in which he discusses at some length and with citation of authorities the validity of the secret trust and the testimony by which it was established, and then, without in terms passing upon the contention respecting the releases, states "the

view that I have taken of the facts and the law of this case renders it unnecessary for me to consider the very interesting questions of law propounded by the learned counsel for the defendants Reynolds, Achter and Fayerweather;" and finally the testimony of the trial judge, given on the hearing in this case some six years after his decision in the state court, to the effect that in deciding the case he did not consider the question of the validity of the releases.

It is undoubtedly true that in some cases evidence may be introduced outside the record to show what particular question was tried and determined in the former suit. *Washington, Alexandria & Georgetown Steam-Packet Company* v. *Sickles,* 24 How. 333, 344; *Packet Co.* v. *Sickles,* 5 Wall. 580, 592; *Russell* v. *Place,* 94 U. S. 606, 608. But it does not follow that testimony of every kind is admissible for that purpose. In *Packet Company* v. *Sickles, supra,* although it was held that "in cases where the record itself does not show that the matter was necessarily and directly found by the jury, evidence *aliunde* consistent with the record may be received to prove the fact," yet it appearing that some of the jurors on the former trial were permitted to testify as to the particular ground upon which they found their verdict, it was said (p. 593):

"But it is proper to say that the secret deliberations of the jury, or grounds of their proceedings while engaged in making up their verdict, are not competent or admissible evidence of the issues or finding. The jurors oftentimes, though they may concur in the result, differ as to the grounds or reasons upon which they arrive at it.

"The evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration, and then the record furnishes the only proper proof of the verdict."

See also *Wood* v. *Jackson,* 8 Wend. 9, 36; *Lawrence* v. *Hunt,* 10 Wend. 80, 85.

Tested by the rule thus laid down the testimony of the trial

judge, given six years after the case had been disposed of, in respect to the matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule is not wholly applicable, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts—matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision. Undoubtedly, when the pleadings are general, as in a case of the common counts, evidence may be given of the testimony which was introduced on the trial, for that may disclose what must have been considered and determined. And where the evidence is that testimony was offered at the prior trial, upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of *res judicata* must fail.

Putting one side the oral testimony of the trial judge, there is nothing in the other matters specified to disturb the conclusion which follows from an examination of the record that the validity of the releases was actually determined. Of course, the omission of special findings means nothing, for the judgment implies a finding of all necessary facts. The memorandum of decision naturally states the grounds for arriving at a conclusion concerning the respective claims of the colleges named in the ninth clause and the beneficiaries of the deed of gift, for that was the controversy between those parties and indeed the primary controversy presented by the pleadings. The declaration in the opinion, that the conclusion reached upon the matters discussed rendered it unnecessary to consider the questions of law propounded by the counsel for these plaintiffs, must be read in the light of the

prior statement therein that the widow and next of kin were demanding that the releases executed by them be set aside and they be given the residuary estate, and the further fact that whether the releases were fraudulently obtained and void was a question of fact rather than of law. Evidently the opinion proceeded and the conclusion was reached on the assumption that there was no sufficient testimony to invalidate the releases.

Further, the entire record of the case was taken on appeal to the general term. That court had before it for consideration all the evidence which was presented to the trial court; and, as we have seen, declared in its opinion that there was no evidence justifying the contention that the releases were procured by fraud and undue influence. While this was not stated in the form of a special finding it discloses the conclusion of the court from the evidence. We cannot hold that it was not authorized to pass upon this question, for its conclusion was sustained by the Court of Appeals, which in its opinion also referred to the question. Finally, by the motion to amend its remittitur, the attention of the Court of Appeals was specifically called to these very matters which are now urged as showing a failure on the part of the lower courts to determine the question of the validity of the releases, and it refused to make any order which would permit a further consideration. Nothing can be clearer from this record than that the question of the validity of the releases was not only before the state courts, but was considered and determined by them, and the regularity of the procedure was sustained by the highest court of the State. The question was, as affirmed by counsel for these appellants, put in issue by the pleadings, and its determination was a necessary prerequisite to an adverse judgment. It was referred to by all the courts in their opinions, was affirmatively decided by the general term, its decision sustained by the Court of Appeals and reaffirmed by that court, by a refusal to amend its remittitur.

Under these circumstances the pleas of *res judicata* were

properly sustained, and the decree of the Circuit Court dismissing the bill and cross bill is

*Affirmed.*

The CHIEF JUSTICE did not hear the argument and took no part in the decision of these cases.