FERNÁNDEZ ET AL. *v.* VELÁZQUEZ.

APPEAL from the District Court of Humacao.

No. 621.—Decided June 9, 1911.

ACTION OF EJECTMENT—PLAINTIFF'S TITLE—LIQUIDATION OF INHERITANCE.—
   While the liquidation of the inheritance, and consequently the corresponding partition and adjudication to each heir of his corresponding interest,

has not been made, the heirs have no real title to recover certain and specific properties of the inheritance.

ID.—WRIT OF EXECUTION ISSUED AGAINST DECEASED PERSON—NULLITY OF WRIT OF EXECUTION—VOIDABLE—THE LAW IN PORTO RICO.—Under the common law and the general jurisprudence of the United States a writ of execution against a dead man is a nullity. In a few instances such order has been held voidable only. Where the rule of the common law in this matter has been modified by statute, the same must be followed strictly. In Porto Rico, according to section 244 of the Code of Civil Procedure, a writ of execution may be issued even after the death of the judgment debtor, where the judgment is to recover real or personal property.

INSCRIPTION IN REGISTRY OF PROPERTY—VOID ACTS—THIRD PARTIES.—The record of instruments or contracts which are null in accordance with the law does not validate the same; but instruments or contracts executed or covenanted by a person who according to the registry has a right to do so shall not be invalidated with regard to a third person after they have once been recorded, although later the right of the person executing them is annulled or rescinded by virtue of a prior deed not recorded, or for reasons which do not clearly appear from the registry.

ID.—TITLE OF HEIRS.—For the purposes of the registry, the title of the heirs originates from the entry made in the registry.

The facts are stated in the opinion.

Messrs. *T. D. Mott, Jr.*, and *Hord & Scoville* for appellants.

Mr. *Luis Muñoz Morales* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action of ejectment, and for damages. The plaintiffs alleged in substance: First, that two of them, José Maximino and Catalina Dolores Fernández y Borrás, are minors and appear in this action under the authority of and represented by their father, the other party plaintiff; second, that Evaristo Fernández appears in his own right and in representation of his said minor children; third, that plaintiffs are the owners of one-half of three rural properties containing 76.77, 60, and 1½ *cuerdas* respectively, which properties are described in detail; fourth, that on and since July 18, 1908, the defendant Velázquez has been and is in possession of said properties pretending to be the lawful owner thereof; that said defendant is not the owner nor has legal title to said properties or any part thereof; that said defendant is illegally and unjustly in possession of said properties against the will of the plaintiffs, thus causing damages

to the latter in the sum of $10,000; that the value of the properties is $20,000.

The complaint concludes with the prayer that the court declare the plaintiffs to be the owners of an undivided one-half interest in the properties described; that they had a right to such possession during all of the time mentioned in the complaint; and that it order the defendant to pay to the plaintiffs $10,000 as damages.

The defendant answered, alleging substantially: First, that the first and second allegations of the complaint are true; second, that he denies that the plaintiffs are or ever have been the owners of one-half of the properties described in the complaint; third, that the dominion and possession of the property of 76.77 *cuerdas* pertaining to Puig Hermanos & Co., who conveyed it to Bartolomé Borrás by deed executed on December 23, 1875, the sale having been recorded in the registry of property on June 13, 1892; that at the death of Borrás, who died testate, the title to the property passed by inheritance to his widow, Gerónima Ginart, and to his daughters, Catalina and Juana Borrás y Ginart, the same having been recorded in the registry on August 12, 1893; that in an action brought in the District Court of Humacao by Francisco and María Antonia Ramis against Catalina and Juana Borrás y Ginart, the Succession of Gerónima Ginart, and B. Borrás Hermanos, in liquidation, the property in question was awarded in the execution of the judgment rendered in favor of the plaintiffs, the marshal executing a deed of sale on July 5, 1905, their right having been recorded in the registry of property; that Francisco and María Antonia Ramis, by public deed of May 3, 1906, which was recorded in the registry of property, sold the property to M. A. Walker; that M. A. Walker in turn sold it to J. B. Cobb by public deed dated December 17, 1906, which was also recorded in the registry, and that J. B. Cobb finally sold it to the defendant by public deed dated July 18, 1908; that since that date the defendant has been the lawful owner of said property, his

title having been recorded in the registry of property, he being actually in the quiet and lawful possession thereof and that the plaintiffs never were the owners nor had ever been in possession of even the smallest portion of the property, which neither was nor is recorded in their favor in the registry of property; fourth, that dominion and possession of the other property of 60 *cuerdas* were acquired by Bartolomé Borrás from Felipe Jiménez by a public instrument dated March 30, 1871; that from Borrás the property passed to his heirs, Gerónima Ginart, his widow, and Juana and Catalina Borrás y Ginart, his daughters; that by adjudication in the execution of a judgment the property was transferred to Francisco and María Antonia Ramis; that from them it passed to M. A. Walker; from Walker to J. B. Cobb, and from the latter to the defendant, all of which conveyances were made in the same manner as those of the property of 76.77 *cuerdas,* and all appearing recorded in the registry of property wherein the alleged right of plaintiffs, who never owned the least portion of such property, does not appear recorded; fifth, that the dominion and possession of the third property of 1½ *cuerdas* were acquired by Bartolomé Borrás by purchase from Isabel Ramírez by virtue of a public deed of October 14, 1870; that from Borrás it passed to his heirs, from them to the Ramises, from the Ramises to M. A. Walker, from the latter to J. B. Cobb, and from Cobb to the defendant Velázquez, in the same manner as the other estates; and sixth, that the defendant denies that the plaintiffs, not having had nor having any right to the properties in question, have suffered damages on account of his lawful possession and that of his predecessors of the real properties in litigation.

The answer concludes with the prayer that the complaint be dismissed with costs against the plaintiffs.

The evidence introduced by plaintiffs consists of:

(*a*) The testimony of plaintiff, Evaristo Fernández, which is as follows:

"That his name is Evaristo Fernández; that he is one of the plaintiffs in this action, and that José Maximino Fernández Borrás and Catalina Borrás are his legitimate children; that he was married to Catalina Borrás Ginart, the above-mentioned children being the offspring of such marriage; that Catalina Borrás was the daughter of Gerónima Ginart and Bartolomó Borrás; that Gerónima Ginart is dead, her death having occurred prior to that of Catalina; that Bartolomé Borrás left two daughters, to wit, Catalina and Juana Borrás y Ginart; that Catalina and Juana constitute the Succession of Gerónima Ginart; that he is familiar with the lands described in the complaint—that is to say, with the parcel of land of 264 *cuerdas* situated in *barrio* Cañabón, the other of 11 *cuerdas* situated in *barrio* Cagüitas, the other 31 *cuerdas,* also situated in said *barrio* Cagüitas, another of 22.39 *cuerdas* in said *barrio* of Cagüitas, and another of 37 *cuerdas* situated in *barrio* Bairoa, and that he has known these tracts of land for about 20 years; that all of these lands are suitable for planting sugar cane, for which purpose they are excellent, and that the present rental value of these lands in the vicinity of Caguas is at least $1 per *cuerda* per month; that he is acquainted with the rental value of leased lands in Caguas; that this is $1 a month per *cuerda;* and that such has been the regular figure for the last four or five years in this vicinity."

(*b*) A certified copy of the decision rendered on December 20, 1904, by the District Court of San Juan, declaring as heirs of María Catalina Borrás y Ginart, who died on June 4, 1904, her children, José Maximino and Catalina Dolores Fernández, and her widower, Everisto Fernández.

(*c*) The testimony of José L. Pereyó, Marshal of the District Court of Humacao, introduced for the purpose of showing to the court certain records concerning the execution of a judgment, and

(*d*) The record above referred to showing that for the execution of the judgment rendered on July 10, 1903, in *Ramis* v. *Borrás et al.,* a writ of execution was issued on June 12, 1905; that the properties of 60 and 76.77 *cuerdas* previously attached were sold to the plaintiffs at auction ,and that the proceeds of such sale being insufficient to satisfy the entire judgment an attachment was levied upon other

properties belonging to defendant, including that of the 1½ *cuerdas* referred to in the complaint.

The evidence of the defendant consisted of several public instruments proving the conveyances made by the Ramises to Walker, by Walker to Cobb, and by Cobb to Velázquez, all of which instruments were duly recorded in the registry of property.

The district court decided that the law and the facts were against the plaintiffs, and therefore dismissed the complaint with costs. From that judgment this appeal has been taken.

The plaintiffs·allege that from the evidence introduced not only their title to one-half of the properties in question, but the nullity of defendant's title clearly appears, because said evidence shows that when the writ of execution was issued in the suit of *Ramis* v. *Borrás et al.* the defendant, Catalina Borrás y Ginart, was dead. This is unquestionably the fundamental question involved in this litigation.

First of all we will review the evidence concerning the hereditary rights alleged by the plaintiffs. It appears beyond doubt that the properties in litigation belonged to Bartolomé Borrás and that at the death of Borrás, who died testate, they were inherited by his daughters, Catalina and Juana, and his widow, Gerónima Ginart, in whose names they appear recorded in the registry of property.

The plaintiffs, under title of heirs of Catalina Borrás y Ginart, claim one-half of the properties, but they do not show that such half of the properties was ever recorded in the registry in the name of their predecessor, nor that such predecessor was ever in possession thereof. It may be argued that the claim is for an undivided one-half of the properties and that the said properties being recorded in the name of the mother and two daughters, at the death of the mother her hereditary estate passed to the sisters in equal shares, each of the latter becoming owner of an undivided one-half. But these facts which at first seem logical require full demonstration in actions of this nature, in which not only rights are

claimed, but an effort is made to destroy other rights acquired *prima facie* in good faith and in accordance with the law.

The only evidence introduced to show the death of Gerónima Ginart and also that her daughters, Catalina and Juana, compose her succession is the testimony of the plaintiff, Evaristo Fernández, which is very deficient and contradictory. Nothing is known as to whether Gerónima Ginart died testate or intestate, as to what properties composed her estate, nor as to how they were apportioned, all of which facts must necessarily be known in order to conclude that the title of the mother to these properties passed in equal shares and was awarded in equal portions to the two sisters. It must be carefully borne in mind that this suit is not prosecuted by all the heirs of Bartolomé Borrás, who was the original owner of the properties, but by the heirs of an heir of Bartolomé Borrás, who in turn inherited from another heir.

It is therefore very clear that the plaintiffs did not show that their predecessor, Catalina, was the owner of an undivided one-half of the properties they claim as exclusively belonging to them. All that has been shown is that dominion of the properties in question was once recorded in the registry in favor of Gerónima Ginart and Juana and Catalina Borrás. With reference to the estate left by Gerónima Ginart, nothing definite and conclusive was shown during the trial.

In so far as the estate left by Catalina Borrás y Ginart is concerned, all that has been brought out by the evidence is that Catalina died intestate on June 4, 1904, and that on December 20 of the same year the plaintiffs were declared to be her heirs by a court of justice. With reference to the acts performed by the plaintiffs as such heirs, nothing whatever has been alleged or proven.

The estate is only the aggregate of properties remaining after the obligations of the decedent are all satisfied, and the law establishes rules for the liquidation thereof in cases where a will exists as well as those where there is no will. In view of the special character of this suit, the plaintiffs

should have proved that the properties claimed by them really belonged to them by inheritance—that is, that such properties were those remaining or which composed a part of what remained for the heirs after the obligations of the decedent were entirely satisfied.

The Supreme Court of Spain, in its judgment of June 13, 1901 (91 Civil Jurisprudence, 915), laid down the following doctrine:

"While the liquidation of the inheritance, and consequently the corresponding partition and adjudication to each heir of his corresponding share, has not been made, the heirs have no lawful title to recover certain and specific properties of the inheritance, because the will is not a sufficient title to bring such action."

Taking into consideration the foregoing statements and confining ourselves to an examination of the evidence introduced by the plaintiffs in support of their hereditary rights, our conclusion is that even in case they had proven that they had any rights to the ownership of the properties which they claim, their evidence has been of so vague and uncertain a nature that it could not have been taken as a basis upon which to render a judgment such as they seek.

Let us now examine the interesting fundamental issue raised by the appellants concerning the nullity of the writ of execution issued in the case of *Ramis* v. *Borrás et al.* after the death of one of the defendants in this suit.

In the case of *Mitchell* v. *St. Maxent's Lessee,* 71 U. S. 242, Mr. Justice Davis, in delivering the opinion of the Supreme Court of the United States, used the following terms:

"The solution of one question presented by the record is decisive of this case. Does the writ of *fieri facias,* tested and issued after the death of the party against whom the judgment is rendered, confer power on the ministerial officer to execute it? That St. Maxent was the owner of the lands in controversy at the time of his death, and the plaintiffs below are his heirs-at-law, is admitted; but it is claimed that the title was divested by certain proceedings in attachment against him in the courts of Florida, which ripened into a judgment

while he was alive. It is a well-settled principle of law, which has often received the sanction of this court, that the decree or judgment of a court having jurisdiction is binding until reversed, and cannot be collaterally attacked. But the defect in this case occurs after the judgment, and is fatal to Mitchell's title, for purchases at a judicial sale are not protected, if the execution on which the sale was made was void. Void process confers no right on the officer to sell, and all acts done under it are absolute nullities.''

And in the Encyclopedia of Law and Procedure known as Cyc., volume 17, page 991, it is stated as follows:

''At common law if defendant died after judgment and before issuance of execution, no execution could issue without a *scire facias.* This has been the almost universal rule in this country and an execution so issued has almost universally been held void. An execution against a dead man is a nullity, for there is no party defendant in being against whom or against whose property the process can run. In a few instances an execution so issued has been held voidable only, not void. Where, however, the common-law rule in this matter has been changed by statute, the statute should in every particular be strictly pursued in order to claim the rights conferred by it.''

Let us see what our statutes say with respect to this matter. Section 244 of the Code of Civil Procedure provides as follows:

''Notwithstanding the death of a party after the judgment, execution thereon may be issued, or it may be enforced as follows:

''1. In case of the death of the judgment creditor, upon the application of his executor, or administrator, or successor in interest.

''2. In the case of the death of the judgment debtor, if the judgment be for the recovery of real or personal property.''

The specific case under our consideration is clearly within the provisions of the section above quoted, whether the case of *Ramis* v. *Borrás et al.* be considered as one seeking the recovery of real property, as some part of the record mentioning the foreclosure of a mortgage seems to suggest, or one for the recovery of personal property.

The law fails to provide the procedure to be followed in case No. 2 of section 244 as it does in case No. 1, but bear-

ing in mind the established jurisprudence and the provisions of section 69 of the same code, it is indisputable that when the death of the defendant occurs the court rendering the judgment should be notified thereof, and a motion should be filed requesting that the execution be levied against the estate of the deceased, giving to said estate such intervention in the proceedings as corresponds to a real interested party.

Relying upon the evidence introduced, the appellants allege that in the case of *Ramis* v. *Borrás et al.* the writ of execution was issued against all of the defendants, to wit, Catalina and Juana Borrás y Ginart, the Succession of Gerónima Ginart, and Borrás Hermanos, in liquidation, after the death of the defendant, Catalina Borrás, had occurred, without enforcing the judgment as to the heirs of Catalina Borrás, and the execution having been levied upon certain properties which already partially belonged to the plaintiffs as the declared heirs of Catalina.

An examination of the evidence only shows that the writ of execution was really issued against all the defendants in the case, but there is nothing to show whether or not it was done with the knowledge and consent of the heirs of Catalina. This particular fact has been neither alleged nor proven by the plaintiffs.

Owing to the nature of the case, and according to the law in force in Porto Rico, the judgment rendered in the suit of *Ramis* v. *Borrás et al.* could have been executed after the death of one of the defendants; and as it only appears that the spirit of the jurisprudence covering such cases seems to be the prevention of fraud and injustice in the absence of the heirs, the plaintiffs should have shown that they neither had knowledge of the issuance of the writ nor consented to its execution in the form in which it was issued.

But even though we should reach the conclusion that Catalina Borrás, one of the defendants in the case of *Ramis* v. *Borrás et al.*, having died, and the judgment against her

heirs not having been revived, the writ of execution should not have been issued against her, nor should execution have been levied on property which belonged to her, the fact still remains that the writ was issued and was executed on property which in part belonged to her and that the sale was recorded in the registry of property where the title of the plaintiffs did not then nor does at present appear; and such being the case, and the defendant having acquired from the party who, according to the registry, was the owner, his title cannot be invalidated.

The clear and specific provisions of the Mortgage Law, which has been in force in Porto Rico for many years, will readily dispose of this question.

Although article 33 of said law provides that "the record of instruments or contracts which are null in accordance with the law are not validated thereby," article 34, however, provides that:

"Notwithstanding the statements contained in the preceding article, the instruments or contracts executed or covenanted by a person who, according to the registry, has a right thereto, shall not be invalidated with regard to third persons, after they have once been recorded, *although later the right of the person executing them is annulled* or determined by virtue of a prior deed not recorded, or for reasons which do not clearly appear from the registry.

"Only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to the prejudice of third persons, with the exceptions mentioned in article 389."

In the case at bar the defendant acquired from J. B. Cobb, who had his title recorded in the registry; Cobb acquired from M. A. Walker, who was the owner according to the registry; Walker purchased from the Ramises, who had their title recorded; the Ramises acquired from Catalina and Juana Borrás and from the Succession of Gerónima Ginart through a marshal of a court in the execution of a judgment rendered against those who appeared to be the owners according to the registry; the Borrás sisters and Mrs. Ginart

acquired from Bartolomé Borrás, in favor of whom the property was recorded for the first time in the Registry of Property of Caguas. It not only appears that the defendant acquired his title from a person shown by the registry to be the owner, but from one who was actually in possession, and moreover that the defendant is actually in possession of the properties, having his title recorded in the registry.

In regard to the plaintiffs, it appears that notwithstanding that the court declared them heirs of Catalina Borrás on December 20, 1904, they failed to record their title in the registry, and for the purposes of the registry, as Galindo says in his "Legislación Hipotecaria," volume 2, page 207, the title of the heir originates from the registration.

Nothing whatsoever has been alleged or proven in this case with respect to the existence of fraud or bad faith on the part of the defendant or of his predecessors in interest; nor has it even been alleged or proven that said defendant had knowledge of the fact that when the writ of execution was issued in the suit of *Ramis* v. *Borrás et al.* one of the parties defendant in said action had died.

But the appellants allege that the defendant should have carried the investigation of his title beyond the limits of the registry, because the books of the registry indicated that one of the conveyances was made in consequence of a lawsuit.

Article 18 of the Mortgage Law imposes upon registrars the duty of determining, "under their responsibility, the legality of the documents by virtue of which the record is requested, and the capacity of the parties interested by what appears from said documents.

"All the documents issued by judicial authorities shall also be determined by them under their own responsibility, and for the sole purpose of admitting, suspending, or refusing their record or entry."

The defendant, therefore, may have relied upon the opinion of the registrar, and upon the fact that before the registration of the sale executed by the marshal in favor of

the defendants in the case of *Ramis* v. *Borrás,* the registrar examined the legal capacity of the vendor and recorded the deed after reaching the conclusion that he had legal capacity to execute the same in accordance with the law.

But although the defendant may have been under the obligation to search beyond the limits of the registry, as prudence recommends and as should for greater security be done in cases of this nature, upon examining the record in the case what would he have found?

The plaintiffs did not introduce all of the records as evidence, nor did they show that the death of one of the defendants was stated therein; and judging from the record of the execution of the judgment, which forms part of the transcript, the defendant would only have ascertained that the writ of execution was issued against all the defendants, and the death of none of them being stated therein, the proceedings appeared to have been prosecuted entirely in accordance with the law. Moreover, there existed in favor of the Ramises who, as above stated, purchased the properties to which this action refers, at a public auction, held in compliance with an order of a court, the presumption of good faith, as provided in section 7 of An Act relating to judgments and the manner of satisfying them, approved March 9, 1905. (Laws of 1905, p. 115.)

Under whatever aspect, therefore, that this case is considered, the conclusion is reached that the judgment appealed from dismissing the complaint should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and Aldrey concurred.

Mr. Justice Wolf signed, stating that he concurred in the judgment, but not in some of the grounds thereof.