### MONAGAS et al. v. VIDAL.

#### No. 4265.

United States Court of Appeals
First Circuit.

Oct. 4, 1948.
Writ of Certiorari Denied Jan. 17, 1949.
See 69 S.Ct. 483.

Jose A. Poventud, of Ponce, P. R. (Jose Sabater, of Mayaguez, P. R., on the brief), for appellants.

R. Castro Fernandez, of San Juan, P. R. (James R. Beverly, of San Juan, P. R. and J. Alemany Sosa, of Mayaguez, P. R., on the brief), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a final judgment entered by the Supreme Court of Puerto Rico for the plaintiff in an action brought for the liquidation of a partnership (sociedad), and for the partition of its properties among the partners or their successors in interest. The facts are fully set out in the opinion of the court below. For present purposes we can summarize them somewhat.

In 1905 Juan A. Monagas, Ramiro Vidal, and Jose Arturo Monagas organized an agricultural partnership called Monagas & Vidal to last for a term of ten years which term they later (April, 1907) extended to June 30, 1924. The purpose of the partnership was stated to be the cultivation of a farm of 1470 cuerdas located in the municipality of Cabo Rojo, Puerto Rico, known as the Belvedere Estate, which the partners owned individually in equal shares and which they conveyed to the partnership. The partners stipulated in their agreement that they were to share equally in the profits and benefits of the partnership and that in the event of the death of any of them the partnership would continue between surviving partners and the heirs of any deceased partner until the expiration of its term.

Partner Jose Arturo Monagas died in April, 1915, and his wife died approximately a month and a half later, both leaving their five minor children as their sole and universal heirs. Surviving partner Juan A. Monagas became the guardian of these minor children and represented them in the partnership, acting therein as the substitute for their father.

In 1918 (September 27) civil action No. 6,889 on a promissory note was brought in the District Court of Mayaguez against surviving partner Ramiro Vidal individually by one Jose Mora, and in February 1919 the court in that case entered a default judgment for the plaintiff in the amount of $900. Approximately two and one-half years later (August, 1921) and apparently before any steps had been taken to collect this judgment, partner Ramiro Vidal died leaving his widow, Juana Garrastazu-Rivera, one of the defendants herein, and his only son, the plaintiff Neftali Vidal-Garrastazu, then a minor of tender years, as his sole and universal heirs, and they were substituted for their ancestor as partners in the partnership.

Two years later one Beauchamps acquired Mora's rights in the judgment against deceased partner Vidal and then in ex parte proceedings in the insular district court, without hearing and even without out ever thereafter giving notice, succeeded not only in having himself substituted as plaintiff but also in having Vidal's widow and child substituted as defendants. Beauchamps then, to quote the Supreme Court of Puerto Rico in the case at bar "proceeded to execute the judgment, selling at public auction one-third of the Belvedere Estate (which estate, as we have seen, belonged to the partnership Monagas & Vidal and not to the individual members thereof). At the public sale Beauchamps bought in the one-third interest in the estate (which third was then assessed at $14,309.33, defendant Monagas admits was worth $10,000, and plaintiffs claim was worth much more) for $900, the amount of the judgment. On the next day Juan Monagas appeared as purchasing from Beauchamps the undivided interest for $1,602. Monagas then succeeded, we cannot understand how, in recording the one-third interest in the Belvedere Estate in his name, despite the fact that the whole property was already recorded in the name of the partnership Monagas & Vidal."

Then, less than a year later (March 1924) partner Juan A. Monagas and the heirs of deceased partner Jose Arturo Monagas brought a civil action numbered 10,416 in the District Court of Mayaguez against the heirs of deceased partner Ramiro Vidal to liquidate the partnership

Monagas & Vidal; the theory of the action being that although the term of the partnership had not yet expired it was nevertheless dissolved by operation of law when the judgment for $900 in case No. 6,889 was executed; that as a result of the execution in that case, and the transactions which followed it, the heirs of Vidal had lost and Juan A. Monagas had acquired the share in the partnership which had originally belonged to Ramon Vidal, and that although Vidal's widow admitted all this, the "intervention of the court" was necessary because Vidal's son and heir was a minor.

Vidal's widow consented in writing to judgment for the plaintiffs in the above action. But, the Supreme Court of Puerto Rico in its opinion in the instant case said "As she now explains (without being contradicted by Monagas), she signed the written consent at the request of Juan Monagas, while confined in a clinic, and relying on his false representations regarding the contents and effect of the document."[1] The opinion of the court below then continues with the statement that the insular District Court in No. 10,416 "upon examination of the complaint and the consent, without hearing any evidence on the merits of the case or passing upon the necessity or utility of the consent as regards Vidal's minor son, rendered judgment for plaintiffs, declaring the partnership Monagas & Vidal dissolved and liquidated, and awarding two-thirds of the property, that is, the Belvedere Estate, to Juan Monagas, one-third to the heirs of Jose Arturo Monagas, and nothing to the heirs of Vidal."

Partnership affairs remained in this posture until shortly after Ramiro Vidal's son and heir, Neftali Vidal Garrastazu, the plaintiff herein, came of age, when he brought an action in the District Court of Mayaguez numbered 783 against Juan A. Monagas and the heirs of Juan's wife, the heirs of Jose Arturo Monagas, and the heirs of Beauchamps (who had died on May 13, 1925) setting out two causes of action in his complaint which the Supreme Court of Puerto Rico in its opinion in the case at bar described as follows: "(a) The first cause of action set up the execution of the judgment against Vidal in case No. 6889 which culminated in the acquisition by Monagas of the one-third of the Belvedere Estate which according to the complaint belonged to Vidal; and it further alleged that the execution of the judgment was the result of a conspiracy entered into by Monagas and Beauchamps to defraud the heirs of Vidal, and that it was null and void because the heirs of Vidal had not been notified of the motion or the order substituting them as parties defendant, and because of other irregularities in the proceedings. (b) The second cause of action repeated the facts set out in the first cause of action and added allegations regarding the constitution of the partnership Monagas & Vidal, and the complaint, consent, and judgment in case No. 10,416 declaring the partnership Monagas & Vidal dissolved and liquidated, and alleged that both the execution of the judgment in case No. 6889 and the judgment in case No. 10,416 were null and void by reason of irregularities in the proceedings, because they were part of a conspiracy entered into by Monagas and Beauchamps to deprive the heirs of Vidal of the one-third interest in the Belvedere Estate which belonged to them, and because the consent of Vidal's widow to judgment in case No. 10,416 was obtained by Monagas by false and fraudulent representations. Once in the second cause of action it is said that the Belvedere Estate belonged to the partnership Monagas & Vidal but elsewhere it is said, as was said in the first cause of action, that the estate belonged to the three partners in common. The complaint ended by praying for the annulment of the proceedings had in cases Nos. 6,889 and 10,416, and recovery by the heirs of Vidal of one-third of the Belvedere Estate, together with mesne profits since 1921."

---

[1] The contention of the appellant Juan A. Monagas that he was deprived of due process of law by this finding for the reason that it was based upon evidence which the insular District Court in the case at bar had excluded at the trial, will be considered later in this opinion.

The defendants Juan A. Monagas and the heirs of his wife demurred to the complaint in the above case and the District Court sustained their demurrer and entered a judgment for all defendants which became final when the plaintiff's appeal to the Supreme Court of Puerto Rico was dismissed for failure to serve notice of the appeal on the heirs of Beauchamps. Vidal v. Monagas, 60 P.R. 763.

This brings us to the complaint in the case at bar in which Juan A. Monagas, the heirs of his deceased wife, the heirs of Jose Arturo Monagas, the partnership Monagas & Vidal, and the plaintiff's mother, Juana Garrastazu-Rivera, are all named as parties defendant. According to the Supreme Court of Puerto Rico this complaint "simply states the facts regarding the constitution of the partnership Monagas & Vidal, and the death of two of its partners; it recites that the term of the partnership expired on June 30, 1924; that the partnership has not been liquidated; that its assets at the time its term expired consisted of the Belvedere Estate, a sugar mill, houses, cane plantations, livestock, money, and credits, that these assets have remained, since 1924, under the administration of defendant Juan Monagas and of the heirs of Jose Arturo Monagas, and that the plaintiff, the sole heir of Ramiro Vidal, has received no part of the rents or profits therefrom. The plaintiff prays that the liquidation of the partnership Monagas & Vidal be decreed, that the defendants render an accounting of their administration of the firm property, and that they bring into the common fund any assets of the parnership of which they might have taken possession or the value thereof, and that a partition of the assets be made."

All of the defendants, with the exception of the plaintiff's mother, answered this complaint denying certain of its allegations and among other defenses pleading the proceedings in cases Nos. 6,889, 10,416, and 783 as concluding the issues raised. The insular District Court considered these defenses in an elaborate opinion, and, concluding that they were lacking in merit, entered a judgment for the plaintiff ordering the partnership liquidated. On appeal the Supreme Court of Puerto Rico in a carefully reasoned and exhaustive opinion affirmed the judgment of the District Court but modified it with respect to counsel fees. We in our turn think the judgment appealed from should be affirmed.

■ We are here primarily concerned with the effect of the proceedings in cases numbered 6,889, 10,416, and 783, which we have outlined, upon the plaintiff's right to maintain the action under consideration. But we are not confronted with any question of due process of law such as might arise from an application of the doctrine of res judicata to prevent a party from presenting his case on the merits. See Fayerweather v. Ritch, 195 U.S. 276, 297 et seq., 25 S.Ct. 58, 49 L.Ed. 193. For the merits of the plaintiff-appellee's case have been fully considered by both the insular District Court and the insular Supreme Court, and it is the defendant-appellant who is urging the doctrine in support of his contention that it was error for them to have gone into the merits at all. Nor can we have here any question arising under the full faith and credit clause, art. IV, Sec. 1, of the Constitution of the United States, if for no other reason because the prior judgments invoked in bar of the instant action were all rendered by Puerto Rican courts. See Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 524, 51 S.Ct. 517, 75 L.Ed. 1244. The only question is whether the doctrine of res judicata as developed in Puerto Rico and applied by its courts ought to be restrictively applied to prevent the plaintiff from prosecuting the instant action, and this being obviously a question of local law, the narrow question for us under the historic rule reaffirmed and restated by the Supreme Court of the United States in De Castro v. Board of Commissioners of San Juan, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384, is whether the decision of the Supreme Court of Puerto Rico that the judgments enumerated above do not prevent the plaintiff from prosecuting his case to a successful conclusion is "inescapably wrong" or "patently erroneous" (Bonet v. Texas Company, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401) or "plain-

ly inconsistent with established principles of the local law." De Castro v. Board of Commissioners, supra, 322 U.S. at page 455, 64 S.Ct. at page 1123, 88 L.Ed. 1384.

The Supreme Court of Puerto Rico took the view that the execution of the judgment in case No. 6,889 "was void, in the first place, because Vidal's widow and son were not served with notice of their substitution as parties defendant, and therefore the court did not acquire jurisdiction over them." Then the court below went on to say: "But even if the execution in case No. 6,889 were not void, it was academic. What was sold—the interest of the heirs of Vidal in the Belvedere Estate—did not exist. The Belvedere Estate did not belong to Vidal, or his heirs, in whole or in part. It wholly belonged to the partnership Monagas & Vidal. Hence, the execution sale, even if it were not void, could not and did not grant to Monagas, or take from Vidal's heirs, any right. The proceedings had in case No. 6,889 do not therefore constitute any defense to plaintiff's claim."

The holding of the court below to the effect that heirs are entitled to notice and an opportunity to be heard before being substituted as judgment debtors against whom execution of a judgment obtained against their ancestor can be levied, and that any execution obtained in violation of these requirements is void with the result that purchasers at a sale held on such an execution cannot acquire any interest in the property levied upon, is not only in accord with the holding of the Supreme Court of the United States in Mitchell v. St. Maxent's Lessee, 4 Wall. 237, 71 U.S. 237, 242, 18 L.Ed. 326, but is also in accord with decisions in many of the states. See 21 Am.Jur., Executions, § 10. Furthermore the Supreme Court of Puerto Rico apparently considered its holding to be consistent with local precedents since it cited its previous decision in Rosas v. Heirs of Bruno, 41 P.R. 143, as authority for its position. See also Fernandez v. Velazquez, 17 P.R. 716, 723. Under these circumstances we certainly cannot say that the ruling below was "inescapably wrong", "patently erroneous" or "inconsistent with well established prin-

ciples of the local law." This being so we see no occasion to consider the appellant's elaborate argument that the court below fell into reversible error in its secondary conclusion, or dictum, to the effect that even if the execution in case No. 6,889 were not void it was academic.

The court below freely conceded that the judgment in case No. 10,416 "dealt with the same cause of action now before us, and concerned the same parties", and that if it was valid "it decided the issue adversely to the plaintiff." But it considered that the judgment in that case was not valid since the consent of the plaintiff's mother upon which it was based was void. It said: "That consent involved the waiver by the minor of rights which were worth many thousand dollars. The minor and his mother lacked capacity to make that waiver without authorization from a district court which should determine the necessity and utility of such waiver." This it said had been recognized by the plaintiffs in case No. 10,416 since they alleged in their complaint that "the intervention of the court" was necessary. Then the opinion of the court below in the case at bar continues: "The 'intervention of the court' was had, but, as appears on the face of the judgment, that intervention was confined to an examination of the complaint, which, incidentally, was clearly insufficient, and of the consent of the defendants. There was no evidence of the necessity or utility of the consent given on behalf of the minor, nor even an expression of the opinion of the court as to the necessity or utility of the consent. Hence, the consent was void, since there was no judicial declaration of its necessity and utility, and the judgment, which showed on its face the lack of such declaration and of any evidence on this particular, was also void."

Consequently the Supreme Court of Puerto Rico concluded that "The bar to plaintiff's action which was thought to be created by the judgment obtained in case No. 10,416, does not therefore exist."

It appears to be an established principle of Puerto Rican law that a contract of compromise entered into by a parent on behalf of a minor child is not

binding upon the child unless it is authorized by a competent district court, and that "Judicial authorization is not a mechanical function that the court is obliged to perform after a compromise has been agreed upon by the father", but to be valid must rest upon a determination of both the necessity and the utility of the compromise to the child. Cruz v. Central Pasto Viejo, Inc., 44 P.R. 354, interpreting §§ 159 and 212(5) of the Civil Code, 1930 edition. In the case at bar the Supreme Court of Puerto Rico did not see fit to relax the requirement for a specific determination of this necessity and utility even when a district court by entering a judgment consented to by a minor's surviving parent in a case involving a minor's rights has impliedly authorized a compromise made on behalf of a minor. This does not impress us as so at variance with established principles of local law that reversal at our hands is required. On the contrary, we incline to the view that minor's rights are not given adequate protection by judgments entered only because they are consented to by a parent. Certainly we cannot say that it is beyond the competence of the Supreme Court of Puerto Rico to extend its established policy far enough to afford some real measure of protection to a helpless class of persons, such as infants, against loss of their rights by consent judgments entered by their parents without actual judicial scrutiny.

This brings us to the more difficult question of the effect upon the instant litigation of the judgment entered in case No. 783.

The Supreme Court of Puerto Rico held "that the judgment in case No. 783 is no bar to the action now brought by plaintiff * * * on the theory of res judicata" for the reason that in that case "the cause of action was different from the one set up in the case at bar." It said, referring to case No. 783: "That case involved an action to recover a one-third interest in the Belvedere Estate which was said to belong to the plaintiff as heir of Vidal.

The court then held that the action was purely one of revendication[2] and precisely on that ground dismissed it. We know now that the plaintiff did not then have, nor has he now, any right to recover one-third of the Belvedere Estate. Rosaly v. Graham, 16 P.R.R. 156. The Belvedere Estate did not belong to his father, Ramiro Vidal, when the latter died. It belonged to the artificial person, Monagas & Vidal. Upon the death of his father, plaintiff became entitled to one-third of the net proceeds of the liquidation of the partnership Monagas & Vidal. Rosaly v. Graham, supra. And that is what he now claims. His cause of action is therefore different from the one considered insufficient in case No. 783." Then the Supreme Court of Puerto Rico went on to say: "Conceding that in case No. 783 it was definitely determined that the plaintiff was not entitled to a one-third interest in the Belvedere Estate, such a determination does not affect his right to one-third of the value of the assets of the partnership Monagas & Vidal, and their fruits. Particularly is this so if we bear in mind that case No. 783 was decided on the ground that plaintiff's action had prescribed, precisely because it was an action to recover real property, the court conceding that it would not have prescribed had it been an action of any other sort."

The appellants criticize the foregoing. They say that although the action in No. 783 may have differed in form from the one in the case at bar, nevertheless the same result was sought in both, i.e., the liquidation of the assets of the dissolved partnership Monagas & Vidal and distribution of one-third thereof to the plaintiff as his father's heir. Therefore they say, citing Calaf v. Calaf, 232 U.S. 371, 374, 34 S.Ct. 411, 58 L.Ed. 642, "the present case is simply a 'different means to reach the same result'" as that sought in the earlier litigation, and hence they contend that the judgment in the earlier case is conclusive in this one. Furthermore they say that the court below was wholly mis-

[2] "In Civil Law. An action by which a man demands a thing of which he claims to be owner. It applies to immovables as well as movables, to corporeal or incorporeal things." 2 Bouvier's Law Dictionary, Rawle's Third Revision, p. 2953, citing, Merlin, Repert.

taken when it said "that case No. 783 was decided on the ground that plaintiff's action had prescribed, precisely because it was an action to recover real property," thereby intimating that prescription was the sole ground for supporting the defendants' demurrer in that case. On the contrary they say that it clearly appears from the pleadings and the opinion of the District Court in case No. 783 that several grounds, including the conclusive effect of the judgments in cases Nos. 6,889 and 10,-416, were advanced in support of the demurrer interposed therein and that the court considered them all and found all of them adequate. Therefore they contend that the conclusive effect of the judgments in the two earliest cases was conclusively established in the third one, and hence that question is not open in this, the fourth action in the series.

It is hard to see any substantial difference between the case at bar and Calaf v. Calaf, supra, upon which the appellants heavily rely, for in that case it was held by the Supreme Court of Puerto Rico, and on direct appeal the Supreme Court of the United States affirmed, that a dismissal on demurrer without leave to amend of a suit brought by the plaintiffs against the defendant to recover one-half of a decedent's estate precluded a subsequent suit by the same plaintiffs seeking to have the institution of the defendant as the decedent's heir declared void and the intestate succession of the decedent opened, whereby the plaintiffs would become entitled to one-half of the estate—the Supreme Court of the United States saying (232 U.S. page 374, 34 S.Ct. page 412, 58 L.Ed. 642) "these differing allegations are simply different means to reach the same result."

But the doctrine of res judicata is not clear and sharp in outline. It is a rule of judicial administration grounded upon the need for putting a period to litigation, for it is to the interest of the public in general and of particular litigants alike that there be an end to litigation which without the doctrine would be endless. 30 Am.Jur., Judgments, § 165. And,

like all rules of judicial administration, although certain basic principles have in the course of time become crystalized, it is to be applied in particular situations as justice and sound application of the policy behind the doctrine require, within, of course, the Constitutional limitations adverted to earlier in this opinion but which do not concern us here.[3]

Thus the Supreme Court of Puerto Rico must be given latitude in formulating and applying its doctrine of res judicata, for it is the function of that court to establish the rules of insular judicial administration to conform with its view of insular public policy and we conceive it to be our function to reverse that court in such a matter only when we are forced to the conclusion that the result reached below cannot be justified on any logical ground. Such is not the case here, for although the insular District Court in case No. 783 said it was deciding "each one of the grounds" advanced in support of the demurrer interposed therein, and then inter alia held that the judgments in cases numbered 6,889 and 10,416 were not vulnerable to collateral attack, and although it is the prevailing rule that "Private right and public welfare unite in demanding that a question once adjudicated by a court of competent jurisdiction shall, except in direct proceedings to review, be considered as finally settled and conclusive upon the parties. Interest reipublicae ut sit finis litium." (Fayerweather v. Ritch, supra, 195 U.S. at page 299, 25 S.Ct. at page 64, 49 L.Ed. 193), nevertheless it is for the Supreme Court of Puerto Rico to say what was in fact actually decided and what was merely dictum in the opinion of the insular District Court in case No. 783, and there is good basis for the conclusion of the court below that all that was actually decided in No. 783 was that the cause of action set out therein had prescribed. We say this for the reason that the District Court in case No. 783 dealt with the question of prescription at great length but covered the question of res judicata in but one brief paragraph,

[3] For a general discussion of this principle with citation of authorities see the dissenting opinion of Mr. Justice Rutledge in Angel v. Bullington, 330 U.S. 183, 201 et seq., 67 S.Ct. 657, 91 L.Ed. 832.

which incidentally is not clear to us, and then concluded its opinion as follows: "For the Foregoing Reasons, the Court finds that the Complaint does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants; that the action is barred because it was brought after the period of four years fixed by law, and that the defendant Monagas has acquired by prescription the ownership of the interest in 'Belvedere Estate' sought to be recovered, the action of revendication having, therefore, prescribed by reason of the lapse of more than ten years. Consequently, an order is entered sustaining the demurrer for insufficiency; for prescription of the actions, as to the nullity and revendication, declaring the ownership in favor of the defendant, Juan A. Monagas, of the interest sued on, by prescription for lapse of more than ten years and, since the Complaint is not susceptible of amendment, it is hereby dismissed in all its parts, ordering plaintiffs to pay costs without including attorney's fees."

We therefore conclude that the Supreme Court of Puerto Rico did not fall into reversible error in ruling that consideration of the merits of the plaintiff's case was not foreclosed by previous litigation.

▮ There remains the question of due process of law adverted to earlier in this opinion.

It is true that the court below in its opinion in the instant case in the course of stating the facts before it said that the plaintiff's mother had testified without contradiction from Juan A. Monagas that she had consented to judgment against her minor son in case No. 10,416 while she was "confined in a clinic", and hence presumably ill, and in reliance upon false representations by Monagas with respect to "the contents and effect of the document" she signed. This is tantamount to a statement that the defendant Juan A. Monagas by his silence had admitted that he had defrauded the widow and through her the minor son of one of his deceased partners.

But the Supreme Court of Puerto Rico did not dispose of the case at bar on the ground of any fraud practiced by the above Monagas upon the plaintiff. It disposed of the case upon other grounds altogether and hence the above statement if erroneously made is immaterial.

But the statement of the Supreme Court of Puerto Rico was not erroneously made. The record shows that the plaintiff's mother testified without contradiction at the trial of the instant case in the insular District Court that in May 1924, when she was confined in a clinic recovering from an operation, Juan A. Monagas came to see her and after general conversation she said "we agreed that he would prepare a document whereby it would be provided that my son would receive his share when he became of legal age in the same way as the children of Jose Arturo Monagas." It appears that counsel for Juan A. Monagas objected to this testimony on the ground that the document itself would be the best evidence of its contents, but said "All right" when counsel for the plaintiff said "We are now going to offer it, but we are discussing how the agreement regarding the document was made. Those are the preliminary steps of the contract." Following this the plaintiff's mother without objection went on to testify that later she signed the consent to judgment in case No. 10,416, without reading it in the belief that it embodied the agreement she had previously reached with Juan A. Monagas. It is abundantly clear from the record that what was actually objected to by counsel for the defendant Juan A. Monagas, and eventually excluded by the insular District Court on the basis of the best evidence rule, was not the mother's testimony with respect to the reasons which induced her to sign the consent judgment but was her proffered testimony with respect to the contents of that document itself, and this, of course, is quite another matter. We see no need to labor the point further.

The judgment of the Supreme Court of Puerto Rico is affirmed.