THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL IBARRA FELICCI, Defendant and Appellant.

No. 13219. Argued November 9, 1948.—Decided February 14, 1949.

*Córdova & González* for appellant. *Vicente Géigel Polanco, Attorney General, (Luis Negrón Fernández, former Attorney General,* on the brief), and *Guillermo A. Gil, Special General Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In 1929 Rafael Ibarra Felicci was found guilty and convicted in thirteen cases, heard on appeal in the District Court of Humacao, all for the offense of illegal practice of the medical profession. In 1941 he was prosecuted for the same offense in the Municipal Court of Ciales and, after trial, was acquitted. In 1946 the District Attorney of the District Court of Bayamón filed an information in the Municipal Court of Río Piedras against Rafael Ibarra Felicci for the same crime, as a second offense, because of the convictions of 1929, and on appeal was found guilty and sentenced by

the District Court of Bayamón to serve thirty days in jail. Dissatisfied with this judgment he appealed and alleges that the lower court erred (1) in not holding that the People was collaterally estopped from alleging or undertaking to prove that the defendant was not authorized to practice medicine in Puerto Rico and (2) in finding the defendant guilty of committing for the second time the same offense charged in the information.

We have already held that "Judgments on criminal cases have the same effect for purposes of collateral estoppel, as in civil cases, namely, they are conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated therein." *People* v. *Lugo*, 64 P.R.R. 529, Syllabus 5. See also *People* v. *De Jesús*, 65 P.R.R. 872 and *People* v. *Rosas*, *ante*, p. 436.

However, we need not decide which judgment should prevail, whether the conviction of Humacao or the acquittal of Ciales, because although the defendant was acquitted in the latter prosecution the matter litigated therein under the statute in force in 1941 was not the same as that litigated in Humacao under the statute in force in 1929. It is true that in both prosecutions appellant was charged with illegally practicing the medical profession in Puerto Rico. Nevertheless, in 1941, when he was prosecuted in Ciales and the court acquitted him, it did so under the erroneous application of the proviso of § 3 of Act No. 43 of June 7, 1919, which in its pertinent part, provides: ". . . that all duly authorized physicians practicing in Porto Rico for a period of five years prior to the approval of this Act may continue to practice their profession without being subject to the foregoing provisions" which had no longer any legal force by express provision of our Legislature.

From 1903 to 1931 our Legislature approved a series of laws which clearly evince its intention, when approving each one of those laws, as to the requirements to practice medicine in Puerto Rico. Let us review them.

Under § 3 of the Act of March 12, 1903 every person thereafter wishing to practice medicine or surgery or any of its branches or obstetrics in the Island had to apply to the Board of Medical Examiners for a certificate or license. The application had to be accompanied by proof, approved by said Board that the applicant was a graduate of a medical school or institution in good standing and legally organized and if the diploma was found genuine, which fact the Board had to determine, the applicant was required to take an examination and if the candidate qualified, the Board granted him a certificate or license to practice medicine and surgery in Puerto Rico. This § 3 concluded with the following proviso: ". . . that all physicians and surgeons who hold certificates granted by the now existing Board of Medical Examiners shall be exempt from the provisions of this section."

The Act of March 9, 1911 amended the aforesaid proviso of § 3, as follows:

". . . *Provided, however,* That all physicians osteopathic physicians and surgeons who hold certificates granted by the now existing Board of Medical Examiners shall be exempt from the provisions of this section. And that all those who have been practicing in Porto Rico any of these branches *for a period of five years prior to the approval of this Act shall be entitled to continue in the practice of their profession without being subject to the provisions hereinbefore stated."* (Second italics ours.)

Again in 1919, by Act No. 43 of June 7 of said year, the proviso of § 3, *supra,* was amended to read as follows: ". . . that all *duly authorized* physicians practicing in Porto Rico for a period of five years prior to the approval of this Act, may continue to practice their profession without being subject to the foregoing provisions." (Italics ours.)

The amendments made to said proviso consist of the portion written in italics.

Pursuant to Act No. 73 of June 30, 1923 all the former laws which in any way were in conflict were repealed and a new Board of Medical Examiners was established which

again regulated the practice of the medical profession. It is significant that neither this Act nor Act No. 15, approved June 25, 1924 amending it, made reference or contained any saving clause as to the persons for whose benefit the proviso of the Acts of 1911 and 1919, *supra* had been approved.

Furthermore, by express provision of the Legislature, § 3 of the Act of March 12, 1903, as amended by the Act of March 9, 1911, was repealed by Act No. 45 of May 13, 1927.

Section 14 of Act No. 73 of July 30, 1923, as subsequently amended, was reenacted by Act No. 20 of April 19, 1928, but the latter did not revive the aforesaid proviso.

Lastly § 14 of Act No. 22 of April 22, 1931, to regulate the practice of the medical profession in Puerto Rico etc., provides, insofar as pertinent, that

". . . *And provided, also,* That in the future only the following persons may practice the medical profession in Porto Rico: 1. Those who obtained licenses from the Superior Board of Health from the time of its organization to 1901, and whose names appear in the proper registers. 2. Those who likewise obtained licenses from the Superior Board of Health and whose names do not appear in said registers, but who present their licenses to the Board of Medical Examiners for registration in the record of the Board. 3. Those who possess licenses issued by the Board from and after the year 1903, and are registered in the registers of the Department of Health of Porto Rico. 4. *Those who, by decree of the Supreme Court of Porto Rico have a recognized right to practice medicine and surgery in Porto Rico under former legislation;* Provided, likewise, that those so authorized to practice must present to the Board papers proving such recognition, for their proper registration; . ." (Second italics ours.)

It is obvious that appellant has never maintained in the past, nor does he maintain now, that his case may be covered by the first three paragraphs of this proviso. Nor is it covered by the fourth, inasmuch as this Court has never recognized by a judgment his right to practice medicine and surgery under former legislation, nor has he presented to

the Board of Medical Examiners any paper proving such recognition for the proper registration.

This legislation shows that, although we disregard Act of 1927 which expressly repealed § 3 of the Act of 1903, as amended by that of 1911, *supra*, since 1931, and pursuant to the fourth paragraph of the proviso of § 14 of Act No. 22, *supra*, those persons who were practicing medicine in Puerto Rico under the legislative fiat contained in the Acts of 1911 and 1919, could not continue doing so unless recognized so to do by a decree of the Supreme Court. We may and should take judicial notice of the fact that appellant herein has at no time received said recognition from this Court unless he has done so under a different name which would amount to a fraud of no use in a case of this nature. This being so, the doctrine of res judicata could not be pleaded and applied successfully by the People of Puerto Rico in 1941 in the Municipal Court of Ciales with respect to the convictions of 1929 in the District Court of Humacao, inasmuch as the matter litigated therein and the applicable law were different. Nor could defendant, for the same reasons, plead and apply successfully said doctrine in 1946 in the prosecution in Bayamón regarding the acquittal of 1941 in Ciales.

This is so because the doctrine of res judicata is never applied to criminal cases insofar as the judgment of conviction or acquittal is concerned. If such were the case, said judgment would constitute former jeopardy and not res judicata. We must decide here whether questions of fact or of law were previously determined between the parties and, therefore, constitute res judicata in the present case. The inquiry is: what issues were in controversy and which were determined by the Municipal Court of Ciales? The record before us shows that the matter in issue was whether the appellant had a medical license and had practiced the profession during five years prior to 1919. The evidence for the prosecution merely showed that appellant

had treated, as a physician, complainant's wife while he was in prison. That for the defendant tended to show that he had a diploma of doctor of medicine from Hahneman Medical College and Hospital of Chicago issued in 1912 and since then has been practicing the medical profession in Puerto Rico. The Municipal Court, based on these facts and applying Act No. 43 of June 7, 1919, *supra,* and *People* v. *Rodríguez,* 33 P.R.R. 812; *People* v. *Cabrera et al.,* 34 P.R.R. 449 and *People* v. *Rosa,* 36 P.R.R. 223, acquitted the defendant.

These cases construe the scope of the proviso contained in § 3 of the Acts of 1911 and 1919, *supra,* and only in *People* v. *Rodríguez, supra,* did this Court recognize the right of the defendant in that case to practice medicine under those Acts.

So that the facts litigated in the Municipal Court of Ciales were litigated under the erroneous assumption that the proviso of the Act of 1919 was in force and hence that appellant herein was authorized to practice the medical profession. As we have seen, this is not so. On the contrary, Act of 1931 provided that only those persons who by decree of the Supreme Court of Puerto Rico had a recognized right to practice said profession could continue practicing it without a license. Consequently, the issue that should have been litigated but was never litigated in Ciales was whether or not this Court had recognized defendant's right to practice medicine and surgery in Puerto Rico under former legislation. Since this matter was not litigated in Ciales, the District Court of Bayamón was at liberty to consider it. It is true that the lower court failed to do so but this was due to the fact that the defendant did not allege, as a matter of fact, that his right to practice medicine had been recognized by this Court.

As pointed out in our decision in *People* v. *Lugo,* 64 P.R.R. 529, 534, under the doctrine of collateral estoppel, the former judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily liti-

gated and determined by the judgment, but it is not conclusive as to questions which might have been but were not litigated and determined in the original action. In this latter situation the doctrine of collateral estoppel is applied much more narrowly, inasmuch as according to *Commissioner* v. *Sunnen*, 333 U. S. 591, 599, that principle "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, . . ."

The erroneous grounds on which a court bases its judgment is not what should be considered in order to decide whether or not the judgment in itself is correct, and although we cannot and are not interfering with the acquittal of the appellant in Ciales, we must not forget that in deciding whether as a matter of public policy the doctrine of res judicata should be applied, either to criminal or to civil cases, this Court also is the one called upon to determine beforehand, "what was actually decided" in the former case. *Monagas et al.* v. *Vidal Garrastazu*, 170 F. 2d 99. And still, on a better footing, this should be so when confronted with a criminal case dealing with a question of high public policy such as the health and safety of the community which is directly affected by the illegal practice of medicine by persons who do not have the preparation required by statute.

The record of the Municipal Court of Ciales shows that the defendant was acquitted because in the opinion of the court the defendant was authorized to practice medicine under the proviso of the Act of 1919, *supra*. However, as we have noted, the Act of 1931 expressly limited said right to those persons who by decree of this Court had been authorized to practice the medical profession pursuant to former legislation. This was the only defense which as a matter of fact appellant could have raised in the court of Ciales (except the defense that he was not practicing the profession

and this he admitted) but he did not raise the matter and much less litigate it. The erroneous application of the Act of 1919 made by the court, although good to acquit the defendant in that case, cannot operate now to perpetuate the error and to apply the rule of public policy of res judicata in a case involving the protection of the health and safety of the community from the illegal practice of medicine by persons not authorized by law.

The first error was not committed.

 The second assignment alleges that the lower court erred in finding the defendant guilty of a second offense.

The appellant was sentenced under § 9 of Act No. 22 of April 22, 1931, which insofar as material, provides that:

"Every person charged with, and convicted of, illegally practicing medicine or surgery, . . . . . contrary to the provisions of this Act, shall be guilty of a misdemeanor for each violation of said provisions and shall be punished by a fine of not less than twenty-five (25) dollars or by imprisonment in jail, or by both penalties, in the discretion of the court; . . . . . *Provided, further,* That recidivism shall entail a minimum penalty of thirty days in jail."

Appellant argues that the "recidivism" mentioned in this Section refers to persons who, according thereto, have been convicted of illegal practice of medicine or surgery "contrary to the provisions of this Act" and not to persons who might have been convicted of violating the provisions of a former Act, as when appellant was convicted in Humacao of having practiced the medical profession in violation of the Act of 1923, as amended in 1924.

We are inclined to agree with appellant. Section 9 of the Act of 1931, *supra*, is clear insofar as it refers to violations of the Act of 1931. Besides, the Acts of 1923 and 1924 were repealed by said Act. In discussing the first error we have decided that the question of fact to be decided in the case stemmed from the Act of 1931 and not from prior Acts. The charge of a second offense alleged in the information

herein refers to the convictions of 1929 in Humacao for a violation of the Act of 1923 as amended in 1924. This is not the subsequent offense contemplated by the Act of 1931 which establishes a penalty in jail for the second offender, which penalty was absent in the prior Acts.

In a similar situation it was said in *Walker* v. *Commonwealth*, 232 S. W. 617 (Ky. 1921): "It will be observed that the penalties prescribed by the Act of 1920 are more severe than those of the Act of 1916; and further observed that the penalties imposed by the act can only result from the violation of 'any provisions of this Act.'" And it was held that in order to convict the defendant of a second offense the first conviction had to be under the Act of 1920. See also *Scott* v. *Commonwealth*, 298 S. W. 378 (Ky. 1927); *State* v. *Bailey*, 115 So. 613 (La. 1927). It is when a subsequent Act is confined to amend the prior Act that the penalty for a second offense incorporated in the amendatory act may be based on a conviction under the act prior to its amendment. *State* v. *Buttignoni*, 203 P.76 (Wash. 1922); *State* v. *Gendron*, 118 A. 814 (New Hamp. 1922); *State* v. *Costello*, 139 A. 922 (New Hamp. 1928).

Now, since the sentence of thirty days in jail imposed on appellant, as a second offender, is within the maximum that could be imposed by the lower court for a first violation of the Act of 1931, we believe that the judgment appealed from should be modified in the sense of imposing on the defendant thirty days in jail with costs for a violation of § 9 of Act No. 22 of 1931 and, as modified, it is affirmed.

Mr. Justice Negrón Fernández did not participate herein.